(Slip Opinion)      OCTOBER TERM, 2009      1

Syllabus

NOTE: Where it is feasible, a syllabus (headnote) will be released, as is being done in connection with this case, at the time the opinion is issued. The syllabus constitutes no part of the opinion of the Court but has been prepared by the Reporter of Decisions for the convenience of the reader. See *United States* v. *Detroit Timber & Lumber Co.,* 200 U. S. 321, 337.

# SUPREME COURT OF THE UNITED STATES

Syllabus

## RENT-A-CENTER, WEST, INC. *v.* JACKSON

### CERTIORARI TO THE UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT

No. 09–497.   Argued April 26, 2010—Decided June 21, 2010

Respondent Jackson filed an employment-discrimination suit against petitioner Rent-A-Center, his former employer, in a Nevada Federal District Court. Rent-A-Center filed a motion, under the Federal Arbitration Act (FAA), to dismiss or stay the proceedings, 9 U. S. C. §3, and to compel arbitration, §4, based on the arbitration agreement (Agreement) Jackson signed as a condition of his employment. Jackson opposed the motion on the ground that the Agreement was unenforceable in that it was unconscionable under Nevada law. The District Court granted Rent-A-Center's motion. The Ninth Circuit reversed in relevant part.

*Held:* Under the FAA, where an agreement to arbitrate includes an agreement that the arbitrator will determine the enforceability of the agreement, if a party challenges specifically the enforceability of that particular agreement, the district court considers the challenge, but if a party challenges the enforceability of the agreement as a whole, the challenge is for the arbitrator. Pp. 3–12.

(a) Section 2 of the FAA places arbitration agreements on an equal footing with other contracts, *Buckeye Check Cashing, Inc.* v. *Cardegna,* 546 U. S. 440, 443, and requires courts to enforce them according to their terms, *Volt Information Sciences, Inc.* v. *Board of Trustees of Leland Stanford Junior Univ.,* 489 U. S. 468, 478, "save upon such grounds as exist under law or in equity for the revocation of any contract," §2. Here, the Agreement included two relevant arbitration provisions: it provided for arbitration of all disputes arising out of Jackson's employment, including discrimination claims, and it gave the "Arbitrator . . . exclusive authority to resolve any dispute relating to the [Agreement's] enforceability . . . including . . . any claim

Syllabus

that all or any part of this Agreement is void or voidable." Rent-A-Center seeks enforcement of the second provision, which delegates to the arbitrator the "gateway" question of enforceability. See, *e.g.*, *Howsam* v. *Dean Witter Reynolds, Inc.,* 537 U. S. 79, 83–85. The court must enforce the delegation provision under §§3 and 4 unless it is unenforceable under §2. Pp. 3–6.

(b) There are two types of validity challenges under §2: one "challenges specifically the validity of the agreement to arbitrate," and "[t]he other challenges the contract as a whole," *Buckeye, supra*, at 444. Only the first is relevant to a court's determination of an arbitration agreement's enforceability, see, *e.g.*, *Prima Paint Corp. v. Flood & Conklin Mfg. Co.*, 388 U. S. 395, 403–404, because under §2 "an arbitration provision is severable from the remainder of the contract," *Buckeye, supra*, at 445. That does not mean that agreements to arbitrate are unassailable. If a party challenges the validity under §2 of the precise agreement to arbitrate at issue, the federal court must consider the challenge before ordering compliance with the agreement under §4. That is no less true when the precise agreement to arbitrate is itself part of a larger arbitration agreement. Because here the agreement to arbitrate enforceability (the delegation provision) is severable from the remainder of the Agreement, unless Jackson challenged the delegation provision specifically, it must be treated as valid under §2 and enforced under §§3 and 4. Pp. 6–9.

(c) The District Court correctly concluded that Jackson challenged only the validity of the contract as a whole. In his brief to this Court he raised a challenge to the delegation provision for the first time, but that is too late and will not be considered. See *14 Penn Plaza LLC* v. *Pyett,* 556 U. S. ___, ___. Pp. 9–12.

581 F. 3d 912, reversed.

SCALIA, J., delivered the opinion of the Court, in which ROBERTS, C. J., and KENNEDY, THOMAS, and ALITO, JJ., joined. STEVENS, J., filed a dissenting opinion, in which GINSBURG, BREYER, and SOTOMAYOR, JJ., joined.

NOTICE: This opinion is subject to formal revision before publication in the preliminary print of the United States Reports. Readers are requested to notify the Reporter of Decisions, Supreme Court of the United States, Washington, D. C. 20543, of any typographical or other formal errors, in order that corrections may be made before the preliminary print goes to press.

# SUPREME COURT OF THE UNITED STATES

No. 09–497

RENT-A-CENTER, WEST, INC., PETITIONER *v.*
ANTONIO JACKSON

ON WRIT OF CERTIORARI TO THE UNITED STATES COURT OF
APPEALS FOR THE NINTH CIRCUIT

[June 21, 2010]

JUSTICE SCALIA delivered the opinion of the Court.

We consider whether, under the Federal Arbitration Act (FAA or Act), 9 U. S. C. §§1–16, a district court may decide a claim that an arbitration agreement is unconscionable, where the agreement explicitly assigns that decision to the arbitrator.

I

On February 1, 2007, the respondent here, Antonio Jackson, filed an employment-discrimination suit under Rev. Stat. §1977, 42 U. S. C. §1981, against his former employer in the United States District Court for the District of Nevada. The defendant and petitioner here, Rent-A-Center, West, Inc., filed a motion under the FAA to dismiss or stay the proceedings, 9 U. S. C. §3, and to compel arbitration, §4. Rent-A-Center argued that the Mutual Agreement to Arbitrate Claims (Agreement), which Jackson signed on February 24, 2003 as a condition of his employment there, precluded Jackson from pursuing his claims in court. The Agreement provided for arbitration of all "past, present or future" disputes arising out of Jackson's employment with Rent-A-Center, including "claims

for discrimination" and "claims for violation of any federal . . . law." App. 29–30. It also provided that "[t]he Arbitrator, and not any federal, state, or local court or agency, shall have exclusive authority to resolve any dispute relating to the interpretation, applicability, enforceability or formation of this Agreement including, but not limited to any claim that all or any part of this Agreement is void or voidable." *Id.*, at 34.

Jackson opposed the motion on the ground that "the arbitration agreement in question is clearly unenforceable in that it is unconscionable" under Nevada law. *Id.*, at 40. Rent-A-Center responded that Jackson's unconscionability claim was not properly before the court because Jackson had expressly agreed that the arbitrator would have exclusive authority to resolve any dispute about the enforceability of the Agreement. It also disputed the merits of Jackson's unconscionability claims.

The District Court granted Rent-A-Center's motion to dismiss the proceedings and to compel arbitration. The court found that the Agreement ""'"clearly and unmistakenly *[sic]*"'" gives the arbitrator exclusive authority to decide whether the Agreement is enforceable, App. to Pet. for Cert. 4a. (quoting *Howsam* v. *Dean Witter Reynolds, Inc.*, 537 U. S. 79, 83 (2002)), and, because Jackson challenged the validity of the Agreement *as a whole*, the issue was for the arbitrator, App. to Pet. for Cert. 4a (citing *Buckeye Check Cashing, Inc.* v. *Cardegna*, 546 U. S. 440, 444–445 (2006)). The court noted that even if it were to examine the merits of Jackson's unconscionability claims, it would have rejected the claim that the agreement to split arbitration fees was substantively unconscionable under Nevada law. It did not address Jackson's procedural or other substantive unconscionability arguments.

Without oral argument, a divided panel of the Court of Appeals for the Ninth Circuit reversed in part, affirmed in part, and remanded. 581 F. 3d 912 (2009). The court

reversed on the question of who (the court or arbitrator) had the authority to decide whether the Agreement is enforceable. It noted that "Jackson does not dispute that the language of the Agreement clearly assigns the arbitrability determination to the arbitrator," but held that where "a party challenges an arbitration agreement as unconscionable, and thus asserts that he could not meaningfully assent to the agreement, the threshold question of unconscionability is for the court." *Id.*, at 917. The Ninth Circuit affirmed the District Court's alternative conclusion that the fee-sharing provision was not substantively unconscionable and remanded for consideration of Jackson's other unconscionability arguments. *Id.*, at 919–920, and n. 3. Judge Hall dissented on the ground that "the question of the arbitration agreement's validity should have gone to the arbitrator, as the parties 'clearly and unmistakably provide[d]' in their agreement." *Id.*, at 921.

We granted certiorari, 558 U. S. \_\_\_ (2010).

## II

### A

The FAA reflects the fundamental principle that arbitration is a matter of contract. Section 2, the "primary substantive provision of the Act," *Moses H. Cone Memorial Hospital* v. *Mercury Constr. Corp.*, 460 U. S. 1, 24 (1983), provides:

> "A written provision in . . . a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract . . . shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U. S. C. §2.

The FAA thereby places arbitration agreements on an equal footing with other contracts, *Buckeye, supra*, at 443, and requires courts to enforce them according to their

terms, *Volt Information Sciences, Inc.* v. *Board of Trustees of Leland Stanford Junior Univ.*, 489 U. S. 468, 478 (1989). Like other contracts, however, they may be invalidated by "generally applicable contract defenses, such as fraud, duress, or unconscionability." *Doctor's Associates, Inc.* v. *Casarotto*, 517 U. S. 681, 687 (1996).

The Act also establishes procedures by which federal courts implement §2's substantive rule. Under §3, a party may apply to a federal court for a stay of the trial of an action "upon any issue referable to arbitration under an agreement in writing for such arbitration." Under §4, a party "aggrieved" by the failure of another party "to arbitrate under a written agreement for arbitration" may petition a federal court "for an order directing that such arbitration proceed in the manner provided for in such agreement." The court "shall" order arbitration "upon being satisfied that the making of the agreement for arbitration or the failure to comply therewith is not in issue." *Ibid.*

The Agreement here contains multiple "written provision[s]" to "settle by arbitration a controversy," §2. Two are relevant to our discussion. First, the section titled "Claims Covered By The Agreement" provides for arbitration of all "past, present or future" disputes arising out of Jackson's employment with Rent-A-Center. App. 29. Second, the section titled "Arbitration Procedures" provides that "[t]he Arbitrator . . . shall have exclusive authority to resolve any dispute relating to the . . . enforceability . . . of this Agreement including, but not limited to any claim that all or any part of this Agreement is void or voidable." *Id.*, at 32, 34. The current "controversy" between the parties is whether the Agreement is unconscionable. It is the second provision, which delegates resolution of that controversy to the arbitrator, that Rent-A-Center seeks to enforce. Adopting the terminology used by the parties, we will refer to it as the delegation provi-

sion.

The delegation provision is an agreement to arbitrate threshold issues concerning the arbitration agreement. We have recognized that parties can agree to arbitrate "gateway" questions of "arbitrability," such as whether the parties have agreed to arbitrate or whether their agreement covers a particular controversy. See, *e.g.*, *Howsam*, 537 U. S., at 83–85; *Green Tree Financial Corp.* v. *Bazzle*, 539 U. S. 444, 452 (2003) (plurality opinion). This line of cases merely reflects the principle that arbitration is a matter of contract.[1]  See *First Options of Chicago, Inc.* v.

---

[1] There is one caveat. *First Options of Chicago, Inc.* v. *Kaplan*, 514 U. S. 938, 944 (1995), held that "[c]ourts should not assume that the parties agreed to arbitrate arbitrability unless there is 'clea[r] and unmistakabl[e]' evidence that they did so." The parties agree the heightened standard applies here. See Brief for Petitioner 21; Brief for Respondent 54. The District Court concluded the "Agreement to Arbitrate clearly and unmistakenly *[sic]* provides the arbitrator with the exclusive authority to decide whether the Agreement to Arbitrate is enforceable." App. to Pet. for Cert. 4a. The Ninth Circuit noted that Jackson did not dispute that the text of the Agreement was clear and unmistakable on this point. 581 F. 3d 912, 917 (2009). He also does not dispute it here. What he argues now, however, is that it is not "clear and unmistakable" that his *agreement* to that text was valid, because of the unconscionability claims he raises. See Brief for Respondent 54–55. The dissent makes the same argument. See *post*, at 5–8 (opinion of STEVENS, J.).

This mistakes the subject of the *First Options* "clear and unmistakable" requirement. It pertains to the parties' *manifestation of intent*, not the agreement's *validity*. As explained in *Howsam* v. *Dean Witter Reynolds, Inc.*, 537 U. S. 79, 83 (2002), it is an "interpretive rule," based on an assumption about the parties' expectations. In "circumstance[s] where contracting parties would likely have expected a court to have decided the gateway matter," *ibid.*, we assume that is what they agreed to. Thus, "[u]nless the parties clearly and unmistakably provide otherwise, the question of whether the parties agreed to arbitrate is to be decided by the court, not the arbitrator." *AT&T Technologies, Inc.* v. *Communications Workers*, 475 U. S. 643, 649 (1986).

The *validity* of a written agreement to arbitrate (whether it is legally binding, as opposed to whether it was in fact agreed to—including, of

*Kaplan*, 514 U. S. 938, 943 (1995). An agreement to arbitrate a gateway issue is simply an additional, antecedent agreement the party seeking arbitration asks the federal court to enforce, and the FAA operates on this additional arbitration agreement just as it does on any other. The additional agreement is valid under §2 "save upon such grounds as exist at law or in equity for the revocation of any contract," and federal courts can enforce the agreement by staying federal litigation under §3 and compelling arbitration under §4. The question before us, then, is whether the delegation provision is valid under §2.

## B

There are two types of validity challenges under §2: "One type challenges specifically the validity of the agreement to arbitrate," and "[t]he other challenges the contract as a whole, either on a ground that directly affects the entire agreement (*e.g.*, the agreement was fraudulently induced), or on the ground that the illegality of one of the contract's provisions renders the whole contract invalid." *Buckeye*, 546 U. S., at 444. In a line of cases neither party has asked us to overrule, we held that only the first type of challenge is relevant to a court's determination whether the arbitration agreement at issue is enforceable.[2] See *Prima Paint Corp.* v. *Flood & Conklin Mfg. Co.*, 388 U. S. 395, 403–404 (1967); *Buckeye*, *supra*, at

––––––––

course, whether it was void for unconscionability) is governed by §2's provision that it shall be valid "save upon such grounds as exist at law or equity for the revocation of any contract." Those grounds do not include, of course, any requirement that its lack of unconscionability must be "clear and unmistakable." And they are not grounds that *First Options* added for agreements to arbitrate gateway issues; §2 applies to all written agreements to arbitrate.

[2] The issue of the agreement's "validity" is different from the issue whether any agreement between the parties "was ever concluded," and, as in *Buckeye Check Cashing, Inc.* v. *Cardegna*, 546 U. S. 440 (2006), we address only the former. *Id.*, at 444, n. 1.

444–446; *Preston* v. *Ferrer*, 552 U. S. 346, 353–354 (2008). That is because §2 states that a "written provision" "to settle by arbitration a controversy" is "valid, irrevocable, and enforceable" *without mention* of the validity of the contract in which it is contained. Thus, a party's challenge to another provision of the contract, or to the contract as a whole, does not prevent a court from enforcing a specific agreement to arbitrate. "[A]s a matter of substantive federal arbitration law, an arbitration provision is severable from the remainder of the contract." *Buckeye*, 546 U. S., at 445; see also *id.*, at 447 (the severability rule is based on §2).

But that agreements to arbitrate are severable does not mean that they are unassailable. If a party challenges the validity under §2 of the precise agreement to arbitrate at issue, the federal court must consider the challenge before ordering compliance with that agreement under §4. In *Prima Paint*, for example, if the claim had been "fraud in the inducement of the arbitration clause itself," then the court would have considered it. 388 U. S., at 403–404. "To immunize an arbitration agreement from judicial challenge on the ground of fraud in the inducement would be to elevate it over other forms of contract," *id.,* at 404, n. 12. In some cases the claimed basis of invalidity for the contract as a whole will be much easier to establish than the same basis as applied only to the severable agreement to arbitrate. Thus, in an employment contract many elements of alleged unconscionability applicable to the entire contract (outrageously low wages, for example) would not affect the agreement to arbitrate alone. But even where that is not the case—as in *Prima Paint* itself, where the alleged fraud that induced the whole contract equally induced the agreement to arbitrate which was part of that contract—we nonetheless require the basis of challenge to be directed specifically to the agreement to arbitrate before the court will intervene.

Here, the "written provision . . . to settle by arbitration a controversy," 9 U. S. C. §2, that Rent-A-Center asks us to enforce is the delegation provision—the provision that gave the arbitrator "exclusive authority to resolve any dispute relating to the . . . enforceability . . . of this Agreement," App. 34. The "remainder of the contract," *Buckeye*, *supra*, at 445, is the rest of the agreement to arbitrate claims arising out of Jackson's employment with Rent-A-Center. To be sure this case differs from *Prima Paint*, *Buckeye*, and *Preston*, in that the arbitration provisions sought to be enforced in those cases were contained in contracts unrelated to arbitration—contracts for consulting services, see *Prima Paint*, *supra*, at 397, check-cashing services, see *Buckeye*, *supra*, at 442, and "personal management" or "talent agent" services, see *Preston*, *supra*, at 352. In this case, the underlying contract is itself an arbitration agreement. But that makes no difference.[3] Application of the severability rule does not depend on the substance of the remainder of the contract. Section 2 operates on the specific "written provision" to "settle by arbitration a controversy" that the party seeks to enforce. Accordingly, unless Jackson challenged the delegation provision specifically, we must treat it as valid under §2,

—————————

[3] The dissent calls this a "breezy assertion," *post*, at 1, but it seems to us self-evident. When the dissent comes to discussing the point, *post*, at 11, it gives no logical reason why an agreement to arbitrate one controversy (an employment-discrimination claim) is not severable from an agreement to arbitrate a different controversy (enforceability). There is none. Since the dissent accepts that the invalidity of one provision *within an arbitration agreement* does not necessarily invalidate its other provisions, *post*, at 7, n. 7, it cannot believe in some sort of magic bond between arbitration provisions that prevents them from being severed from each other. According to the dissent, it is fine to sever an invalid provision within an arbitration agreement when severability is a matter of state law, but severability is not allowed when it comes to applying *Prima Paint Corp.* v. *Flood & Conklin Mfg. Co.*, 388 U. S. 395 (1967).

and must enforce it under §§3 and 4, leaving any challenge to the validity of the Agreement as a whole for the arbitrator.

## C

The District Court correctly concluded that Jackson challenged only the validity of the contract as a whole. Nowhere in his opposition to Rent-A-Center's motion to compel arbitration did he even mention the delegation provision. See App. 39–47. Rent-A-Center noted this fact in its reply: "[Jackson's response] fails to rebut or otherwise address in any way [Rent-A-Center's] argument that the Arbitrator must decide [Jackson's] challenge to the enforceability of the Agreement. *Thus, [Rent-A-Center's] argument is uncontested.*" *Id.*, at 50 (emphasis in original).

The arguments Jackson made in his response to Rent-A-Center's motion to compel arbitration support this conclusion. Jackson stated that "the *entire agreement* seems drawn to provide [Rent-A-Center] with undue advantages should an employment-related dispute arise." *Id.*, at 44 (emphasis added). At one point, he argued that the limitations on discovery "further suppor[t] [his] contention that the *arbitration agreement as a whole* is substantively unconscionable." *Ibid.* (emphasis added). And before this Court, Jackson describes his challenge in the District Court as follows: He "opposed the motion to compel on the ground that the *entire arbitration agreement*, including the delegation clause, was unconscionable." Brief for Respondent 55 (emphasis added). That is an accurate description of his filings.

As required to make out a claim of unconscionability under Nevada law, see 581 F. 3d, at 919, he contended that the Agreement was both procedurally and substantively unconscionable. It was procedurally unconscionable, he argued, because it "was imposed as a condition of

employment and was non-negotiable." App. 41. But we need not consider that claim because none of Jackson's substantive unconscionability challenges was specific to the delegation provision. First, he argued that the Agreement's coverage was one sided in that it required arbitration of claims an employee was likely to bring—contract, tort, discrimination, and statutory claims—but did not require arbitration of claims Rent-A-Center was likely to bring—intellectual property, unfair competition, and trade secrets claims. *Id.*, at 42–43. This one-sided-coverage argument clearly did not go to the validity of the delegation provision.

Jackson's other two substantive unconscionability arguments assailed arbitration procedures called for by the contract—the fee-splitting arrangement and the limitations on discovery—procedures that were to be used during arbitration under *both* the agreement to arbitrate employment-related disputes *and* the delegation provision. It may be that had Jackson challenged the delegation provision by arguing that these common procedures *as applied* to the delegation provision rendered *that provision* unconscionable, the challenge should have been considered by the court. To make such a claim based on the discovery procedures, Jackson would have had to argue that the limitation upon the number of depositions causes the arbitration of his claim that the Agreement is unenforceable to be unconscionable. That would be, of course, a much more difficult argument to sustain than the argument that the same limitation renders arbitration of his factbound employment-discrimination claim unconscionable. Likewise, the unfairness of the fee-splitting arrangement may be more difficult to establish for the arbitration of enforceability than for arbitration of more complex and fact-related aspects of the alleged employment discrimination. Jackson, however, did not make any arguments specific to the delegation provision; he argued

that the fee-sharing and discovery procedures rendered the *entire* Agreement invalid.

Jackson's appeal to the Ninth Circuit confirms that he did not contest the validity of the delegation provision in particular. His brief noted the existence of the delegation provision, Brief for Appellant in No. 07–16164, p. 3, but his unconscionability arguments made no mention of it, *id.*, at 3–7. He also repeated the arguments he had made before the District Court, see *supra*, at 9, that the "entire agreement" favors Rent-A-Center and that the limitations on discovery further his "contention that the arbitration agreement as a whole is substantively unconscionable," Brief for Appellant 7–8. Finally, he repeated the argument made in his District Court filings, that under state law the unconscionable clauses could not be severed from the arbitration agreement, see *id.*, at 8–9.[4] The point of this argument, of course, is that the Agreement *as a whole* is unconscionable under state law.

Jackson repeated that argument before this Court. At oral argument, counsel stated: "There are certain elements of the arbitration agreement that are unconscionable and, under Nevada law, which would render the *entire arbitration agreement* unconscionable." Tr. of Oral Arg. 43 (emphasis added). And again, he stated, "we've got both certain provisions that are unconscionable, that under Nevada law render the *entire agreement* unconscionable . . . , and that's what the Court is to rely on." *Id.*, at 43–44

───────────

[4] Jackson's argument fails. The severability rule is a "matter of substantive federal arbitration law," and we have repeatedly "rejected the view that the question of 'severability' was one of state law, so that if state law held the arbitration provision not to be severable a challenge to the contract as a whole would be decided by the court." *Buckeye,* 546 U. S., at 445 (citing *Prima Paint*, 388 U. S., at 400, 402–403; *Southland Corp.* v. *Keating*, 465 U. S. 1, 10–14 (1984); *Allied-Bruce Terminix Cos.* v. *Dobson*, 513 U. S. 265, 270–273 (1995)). For the same reason, the Agreement's statement that its provisions are severable, see App. 37, does not affect our analysis.

(emphasis added).

In his brief to this Court, Jackson made the contention, not mentioned below, that the delegation provision itself is substantively unconscionable because the *quid pro quo* he was supposed to receive for it—that "in exchange for initially allowing an arbitrator to decide certain gateway questions," he would receive "plenary post-arbitration judicial review"—was eliminated by the Court's subsequent holding in *Hall Street Associates, L. L. C.* v. *Mattel, Inc.*, 552 U. S. 576 (2008), that the nonplenary grounds for judicial review in §10 of the FAA are exclusive. Brief for Respondent 59–60. He brought this challenge to the delegation provision too late, and we will not consider it.[5] See *14 Penn Plaza LLC* v. *Pyett*, 556 U. S. ___, ___ (2009) (slip op., at 24).

\* \* \*

We reverse the judgment of the Court of Appeals for the Ninth Circuit.

*It is so ordered.*

---

[5] *Hall Street Associates, L. L. C.* v. *Mattel, Inc.*, 552 U. S. 576 (2008), was decided after Jackson submitted his brief to the Ninth Circuit, but that does not change our conclusion that he forfeited the argument. Jackson could have submitted a supplemental brief during the *year and a half* between this Court's decision of *Hall Street* on March 25, 2008 and the Ninth Circuit's judgment on September 9, 2009. Moreover, *Hall Street* affirmed a rule that had been in place in the Ninth Circuit since 2003. *Id.*, at 583–584, and n. 5.

# SUPREME COURT OF THE UNITED STATES

---

No. 09–497

---

## RENT-A-CENTER, WEST, INC., PETITIONER *v.* ANTONIO JACKSON

ON WRIT OF CERTIORARI TO THE UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT

[June 21, 2010]

JUSTICE STEVENS, with whom JUSTICE GINSBURG, JUSTICE BREYER, and JUSTICE SOTOMAYOR join, dissenting.

Neither petitioner nor respondent has urged us to adopt the rule the Court does today: Even when a litigant has specifically challenged the validity of an agreement to arbitrate he must submit that challenge *to the arbitrator* unless he has lodged an objection to the particular line in the agreement that purports to assign such challenges to the arbitrator—the so-called "delegation clause."

The Court asserts that its holding flows logically from *Prima Paint Corp.* v. *Flood & Conklin Mfg. Co.*, 388 U. S. 395 (1967), in which the Court held that consideration of a contract revocation defense is generally a matter for the arbitrator, unless the defense is specifically directed at the arbitration clause, *id.,* at 404. We have treated this holding as a severability rule: When a party challenges a contract, "but not specifically its arbitration provisions, those provisions are enforceable apart from the remainder of the contract." *Buckeye Check Cashing, Inc.* v. *Cardegna*, 546 U. S. 440, 446 (2006). The Court's decision today goes beyond *Prima Paint*. Its breezy assertion that the subject matter of the contract at issue—in this case, an arbitration agreement and nothing more—"makes no difference," *ante*, at 7, is simply wrong. This written

arbitration agreement is but one part of a broader employment agreement between the parties, just as the arbitration clause in *Prima Paint* was but one part of a broader contract for services between those parties. Thus, that the subject matter of the agreement is exclusively arbitration makes *all* the difference in the *Prima Paint* analysis.

## I

Under the Federal Arbitration Act (FAA), 9 U. S. C. §§1–16, parties generally have substantial leeway to define the terms and scope of their agreement to settle disputes in an arbitral forum. "[A]rbitration is," after all, "simply a matter of contract between the parties; it is a way to resolve those disputes—but only those disputes— that the parties have agreed to submit to arbitration." *First Options of Chicago, Inc.* v. *Kaplan*, 514 U. S. 938, 943 (1995). The FAA, therefore, envisions a limited role for courts asked to stay litigation and refer disputes to arbitration.

Certain issues—the kind that "contracting parties would likely have expected a court to have decided"—remain within the province of judicial review. *Howsam* v. *Dean Witter Reynolds, Inc.*, 537 U. S. 79, 83 (2002); see also *Green Tree Financial Corp.* v. *Bazzle*, 539 U. S. 444, 452 (2003) (plurality opinion); *AT&T Technologies, Inc.* v. *Communications Workers*, 475 U. S. 643, 649 (1986). These issues are "gateway matter[s]" because they are necessary antecedents to enforcement of an arbitration agreement; they raise questions the parties "are not likely to have thought that they had agreed that an arbitrator would" decide. *Howsam*, 537 U. S., at 83. Quintessential gateway matters include "whether the parties have a valid arbitration agreement at all," *Bazzle*, 539 U. S., at 452 (plurality opinion); "whether the parties are bound by a given arbitration clause," *Howsam*, 537 U. S., at 84; and

"whether an arbitration clause in a concededly binding contract applies to a particular type of controversy," *ibid.* It would be bizarre to send these types of gateway matters to the arbitrator as a matter of course, because they raise a "'question of arbitrability.'"[1] See, *e.g.*, *ibid.; First Options*, 514 U. S., at 947.

"[Q]uestion[s] of arbitrability" thus include questions regarding the existence of a legally binding and valid arbitration agreement, as well as questions regarding the scope of a concededly binding arbitration agreement. In this case we are concerned with the first of these categories: whether the parties have a valid arbitration agreement. This is an issue the FAA assigns to the courts.[2] Section 2 of the FAA dictates that covered arbitration agreements "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U. S. C. §2. "[S]uch grounds," which relate to contract validity and formation, include the claim at issue in this case, unconscionability. See *Doctor's Associates, Inc.* v. *Casarotto*, 517 U. S. 681, 687 (1996).

Two different lines of cases bear on the issue of *who* decides a question of arbitrability respecting validity, such as whether an arbitration agreement is unconscionable. Although this issue, as a gateway matter, is typically for the court, we have explained that such an issue can be delegated to the arbitrator in some circumstances. When

---

[1] Although it is not clear from our precedents, I understand "gateway matters" and "questions of arbitrability" to be roughly synonymous, if not exactly so. At the very least, the former includes all of the latter.

[2] Gateway issues involving the scope of an otherwise valid arbitration agreement also have a statutory origin. Section 3 of the FAA provides that "upon being satisfied that the issue involved in such suit . . . is referable to arbitration under such an agreement," a court "shall . . . stay the trial of the action until such arbitration has been had." 9 U. S. C. §3.

the parties have purportedly done so, courts must examine two distinct rules to decide whether the delegation is valid.

The first line of cases looks to the parties' intent. In *AT&T Technologies*, we stated that "question[s] of arbitrability" may be delegated to the arbitrator, so long as the delegation is clear and unmistakable. 475 U. S., at 649. We reaffirmed this rule, and added some nuance, in *First Options*. Against the background presumption that questions of arbitrability go to the court, we stated that federal courts should "generally" apply "ordinary state-law principles that govern the formation of contracts" to assess "whether the parties agreed to arbitrate a certain matter (including arbitrability)." 514 U. S., at 944. But, we added, a more rigorous standard applies when the inquiry is whether the parties have "agreed to arbitrate arbitrability": "Courts should not assume that the parties agreed to arbitrate arbitrability unless there is clear and unmistakable evidence that they did so."[3] *Ibid.* (internal quotation marks and brackets omitted). JUSTICE BREYER's unanimous opinion for the Court described this standard as a type of "revers[e]" "presumption"[4]—one in favor of a judicial, rather than an arbitral, forum. *Id.*, at 945. Clear and unmistakable "evidence" of agreement to arbitrate arbitrability might include, as was urged in *First Options*, a course of conduct demonstrating assent,[5] *id.*, at 946, or, as

---

[3] We have not expressly decided whether the *First Options* delegation principle would apply to questions of arbitrability that implicate §2 concerns, *i.e.*, grounds for contract revocation. I do not need to weigh in on this issue in order to resolve the present case.

[4] It is a "revers[e]" presumption because it is counter to the presumption we usually apply in favor of arbitration when the question concerns whether a particular dispute falls within the scope of a concededly binding arbitration agreement. *First Options*, 514 U. S., at 944–945.

[5] In *First Options* we found no clear and unmistakable assent to delegate to the arbitrator questions of arbitrability, given the parties'

is urged in this case, an express agreement to do so. In any event, whether such evidence exists is a matter for the court to determine.

The second line of cases bearing on who decides the validity of an arbitration agreement, as the Court explains, involves the *Prima Paint* rule. See *ante*, at 6. That rule recognizes two types of validity challenges. One type challenges the validity of the arbitration agreement itself, on a ground arising from an infirmity in that agreement. The other challenges the validity of the arbitration agreement tangentially—via a claim that the entire contract (of which the arbitration agreement is but a part) is invalid for some reason. See *Buckeye*, 546 U. S., at 444. Under *Prima Paint*, a challenge of the first type goes to the court; a challenge of the second type goes to the arbitrator. See 388 U. S., at 403–404; see also *Buckeye*, 546 U. S., at 444–445. The *Prima Paint* rule is akin to a pleading standard, whereby a party seeking to challenge the validity of an arbitration agreement must expressly say so in order to get his dispute into court.

In sum, questions related to the validity of an arbitration agreement are usually matters for a court to resolve before it refers a dispute to arbitration. But questions of arbitrability may go to the arbitrator in two instances: (1) when the parties have demonstrated, clearly and unmistakably, that it is their intent to do so; or (2) when the validity of an arbitration agreement depends exclusively on the validity of the substantive contract of which it is a part.

## II

We might have resolved this case by simply applying the

_____

conduct. Respondents in that case had participated in the arbitration, but only to object to proceeding in arbitration and to challenge the arbitrators' jurisdiction. That kind of participation—in protest, to preserve legal claims—did not constitute unmistakable assent to be bound by the result. *Id.*, at 946–947.

*First Options* rule: Does the arbitration agreement at issue "clearly and unmistakably" evince petitioner's and respondent's intent to submit questions of arbitrability to the arbitrator?[6] The answer to that question is no. Respondent's claim that the arbitration agreement is unconscionable undermines any suggestion that he "clearly" and "unmistakably" assented to submit questions of arbitrability to the arbitrator. See Restatement (Second) of Contracts §208, Comment *d* (1979) ("[G]ross inequality of bargaining power, together with terms unreasonably favorable to the stronger party, may confirm indications that the transaction involved elements of deception or compulsion, or may show that the weaker party had no meaningful choice, no real alternative, or did not in fact assent or appear to assent to the unfair terms"); *American Airlines, Inc.* v. *Wolens*, 513 U. S. 219, 249 (1995) (O'Connor, J., concurring in judgment and dissenting in part) ("[A] determination that a contract is 'unconscionable' may in fact be a determination that one party did not intend to agree to the terms of the contract").[7] The fact

---

[6] Respondent has challenged whether he "meaningfully agreed to the terms of the form Agreement to Arbitrate, which he contends is procedurally and substantively unconscionable." 581 F. 3d 912, 917 (CA9 2009). Even if *First Options* relates only to "manifestations of intent," as the Court states, see *ante*, at 5–6, n. 1 (emphasis deleted), whether there has been meaningful agreement surely bears some relation to whether one party has manifested intent to be bound to an agreement.

[7] The question of unconscionability in this case is one of state law. See, *e.g.*, *Perry* v. *Thomas*, 482 U. S. 483, 492, n. 9 (1987). Under Nevada law, unconscionability requires a showing of "'both procedural and substantive unconscionability,'" but "less evidence of substantive unconscionability is required in cases involving great procedural unconscionability." *D. R. Horton, Inc.* v. *Green*, 120 Nev. 549, 553–554, 96 P. 3d 1159, 1162 (2004). I understand respondent to have claimed, in accord with Nevada law, that the arbitration agreement contained substantively unconscionable provisions, and was also the product of procedural unconscionability as a whole. See Brief for Respondent 3 ("[Respondent] argued that the clause is procedurally unconscionable

that the agreement's "delegation" provision suggests assent is beside the point, because the gravamen of respondent's claim is that he never consented to the terms in his agreement.

In other words, when a party raises a good-faith validity challenge to the arbitration agreement itself, that issue must be resolved before a court can say that he clearly and unmistakably intended to *arbitrate* that very validity question. This case well illustrates the point: If respondent's unconscionability claim is correct—*i.e.*, if the terms of the agreement are so one-sided and the process of its making so unfair—it would contravene the existence of clear and unmistakable assent to arbitrate the very question petitioner now seeks to arbitrate. Accordingly, it is necessary for the court to resolve the merits of respondent's unconscionability claim in order to decide whether the parties have a valid arbitration agreement under §2. Otherwise, that section's preservation of revocation issues for the Court would be meaningless.

This is, in essence, how I understand the Court of Appeals to have decided the issue below. See 581 F. 3d 912, 917 (CA9 2009) ("[W]e hold that where, as here, a party challenges an arbitration agreement as unconscionable, and thus asserts that he could not meaningfully assent to

---

because he was in a position of unequal bargaining power when it was imposed as a condition of employment"); *id.*, at 3–4 (identifying three distinct provisions of the agreement that were substantively unconscionable); accord, 581 F. 3d, at 917.

Some of respondent's arguments, however, could be understood as attacks not on the enforceability of the agreement as a whole but merely on the fairness of individual contract terms. Such term-specific challenges would generally be for the arbitrator to resolve (at least so long as they do not go to the identity of the arbitrator or the ability of a party to initiate arbitration). Cf. Restatement (Second) of Contracts §208 (1979) (providing that "a contract or term thereof [may be] unconscionable" and that in the latter case "the remainder of the contract without the unconscionable term" may be enforced).

the agreement, the threshold question of unconscionability is for the court"). I would therefore affirm its judgment, leaving, as it did, the merits of respondent's unconscionability claim for the District Court to resolve on remand.

### III

Rather than apply *First Options*, the Court takes us down a different path, one neither briefed by the parties nor relied upon by the Court of Appeals. In applying *Prima Paint*, the Court has unwisely extended a "fantastic" and likely erroneous decision. 388 U. S., at 407 (Black, J., dissenting).[8]

As explained at the outset, see *supra*, at 3–7, this case lies at a seeming crossroads in our arbitration jurisprudence. It implicates cases such as *First Options*, which address whether the parties intended to delegate questions of arbitrability, and also those cases, such as *Prima Paint*, which address the severability of a presumptively valid arbitration agreement from a potentially invalid contract. The question of "Who decides?"—arbitrator or court—animates both lines of cases, but they are driven by different concerns. In cases like *First Options*, we are concerned with the parties' intentions. In cases like *Prima Paint*, we are concerned with *how* the parties challenge the validity of the agreement.

Under the *Prima Paint* inquiry, recall, we consider whether the parties are actually challenging the validity of the arbitration agreement, or whether they are chal-

───────────

[8] Justice Black quite reasonably characterized the Court's holding in *Prima Paint* as "fantastic," *id.,* at 407 (dissenting opinion), because the holding was, in his view, inconsistent with the text of §2 of the FAA, 388 U. S., at 412, as well as the intent of the draftsmen of the legislation, *id.,* at 413–416. Nevertheless, the narrow holding in that case has been followed numerous times, see *Buckeye Check Cashing, Inc.* v. *Cardegna*, 546 U. S. 440 (2006), and *Preston* v. *Ferrer*, 552 U. S. 346 (2008), and, as the Court correctly notes today, neither party has asked us to revisit those cases, *ante,* at 6.

lenging, more generally, the contract within which an arbitration clause is nested. In the latter circumstance, we assume there is no infirmity *per se* with the arbitration agreement, *i.e.*, there are no grounds for revocation of the arbitration agreement itself under §2 of the FAA. Accordingly, we commit the parties' general contract dispute to the arbitrator, as agreed.

The claim in *Prima Paint* was that one party would not have agreed to contract with the other for services had it known the second party was insolvent (a fact known but not disclosed at the time of contracting). 388 U. S., at 398. There was, therefore, allegedly fraud in the inducement of the contract—a contract which also delegated disputes to an arbitrator. Despite the fact that the claim raised would have, if successful, rendered the embedded arbitration clause void, the Court held that the merits of the dispute were for the arbitrator, so long as the claim of "fraud in the inducement" did not go to validity of "*the arbitration clause* itself." *Id.*, at 403 (emphasis added). Because, in *Prima Paint*, "no claim ha[d] been advanced by Prima Paint that [respondent] fraudulently induced it to enter into the agreement to arbitrate," and because the arbitration agreement was broad enough to cover the dispute, the arbitration agreement was enforceable with respect to the controversy at hand. *Id.*, at 406.

The *Prima Paint* rule has been denominated as one related to severability. Our opinion in *Buckeye*, set out these guidelines:

> "First, as a matter of substantive federal arbitration law, an arbitration provision is severable from the remainder of the contract. Second, unless the challenge is to the arbitration clause itself, the issue of the contract's validity is considered by the arbitrator in the first instance." 546 U. S., at 445–446.

Whether the general contract defense renders the entire

agreement void or voidable is irrelevant. *Id.*, at 446. All that matters is whether the party seeking to present the issue to a court has brought a "discrete challenge," *Preston* v. *Ferrer*, 552 U. S. 346, 354 (2008), "to the validity of the . . . arbitration clause." *Buckeye*, 546 U. S., at 449.

*Prima Paint* and its progeny allow a court to pluck from a potentially invalid *contract* a potentially valid *arbitration agreement*. Today the Court adds a new layer of severability—something akin to Russian nesting dolls—into the mix: Courts may now pluck from a potentially invalid *arbitration agreement* even narrower provisions that refer particular arbitrability disputes to an arbitrator. See *ante*, at 6–7. I do not think an agreement to arbitrate can ever manifest a clear and unmistakable intent to arbitrate its own validity. But even assuming otherwise, I certainly would not hold that the *Prima Paint* rule extends this far.

In my view, a general revocation challenge to a standalone arbitration agreement is, invariably, a challenge to the " 'making' " of the arbitration agreement itself, *Prima Paint*, 388 U. S., at 403, and therefore, under *Prima Paint*, must be decided by the court. A claim of procedural unconscionability aims to undermine the formation of the arbitration agreement, much like a claim of unconscionability aims to undermine the clear-and-unmistakable-intent requirement necessary for a valid delegation of a "discrete" challenge to the validity of the arbitration agreement itself, *Preston*, 552 U. S., at 354. Moreover, because we are dealing in this case with a challenge to an independently executed arbitration agreement—rather than a clause contained in a contract related to another subject matter—any challenge to the contract itself is also, necessarily, a challenge to the arbitration agreement.[9] They are

---

[9] As respondent asserted in his opposition to petitioner's motion to compel arbitration, "the lack of mutuality regarding the type of claims

one and the same.

The Court, however, reads the delegation clause as a distinct mini-arbitration agreement divisible from the contract in which it resides—which just so happens also to be an arbitration agreement. *Ante*, at 6–7. Although the Court simply declares that it "makes no difference" that the underlying subject matter of the agreement is itself an arbitration agreement, *ante*, at 7, that proposition does not follow from—rather it is at odds with—*Prima Paint*'s severability rule.

Had the parties in this case executed only one contract, on two sheets of paper—one sheet with employment terms, and a second with arbitration terms—the contract would look much like the one in *Buckeye*. There would be some substantive terms, followed by some arbitration terms, including what we now call a delegation clause— *i.e.*, a sentence or two assigning to the arbitrator any disputes related to the validity of the arbitration provision. See *Buckeye*, 546 U. S., at 442. If respondent then came into court claiming that the contract was illegal as a whole for some reason unrelated to the arbitration provision, the *Prima Paint* rule would apply, and such a general challenge to the subject matter of the contract would go to the arbitrator. Such a challenge would not call into question the making of the arbitration agreement or its invalidity *per se*.

Before today, however, if respondent instead raised a challenge specific to "the validity of the agreement to arbitrate"—for example, that the agreement to arbitrate was void under state law—the challenge would have gone to the court. That is what *Buckeye* says. See 546 U. S., at 444. But the Court now declares that *Prima Paint*'s plead-

_____

that must be arbitrated, the fee provision, and the discovery provision, so permeate the Defendant's arbitration agreement that it would be impossible to sever the offending provisions." App. 45.

ing rule requires more: A party must lodge a challenge with even greater specificity than what would have satisfied the *Prima Paint* Court. A claim that an *entire* arbitration agreement is invalid will not go to the court unless the party challenges the *particular sentences* that delegate such claims to the arbitrator, on some contract ground that is particular and unique to those sentences. See *ante*, at 8–10.

It would seem the Court reads *Prima Paint* to require, as a matter of course, infinite layers of severability: We must always pluck from an arbitration agreement the specific delegation mechanism that would—but for present judicial review—commend the matter to arbitration, even if this delegation clause is but one sentence within one paragraph within a standalone agreement. And, most importantly, the party must identify this one sentence and lodge a specific challenge to its validity. Otherwise, he will be bound to pursue his validity claim in arbitration.

Even if limited to separately executed arbitration agreements, however, such an infinite severability rule is divorced from the underlying rationale of *Prima Paint*. The notion that a party may be bound by an arbitration clause in a contract that is nevertheless invalid may be difficult for any lawyer—or any person—to accept, but this is the law of *Prima Paint*. It reflects a judgment that the "'national policy favoring arbitration,'" *Preston*, 552 U. S., at 353, outweighs the interest in preserving a judicial forum for questions of arbitrability—*but only when questions of arbitrability are bound up in an underlying dispute. Prima Paint*, 388 U. S., at 404. When the two are so bound up, there is actually no gateway matter at all: The question "Who decides" is the entire ball game. Were a court to decide the fraudulent inducement question in *Prima Paint*, in order to decide the antecedent question of the validity of the included arbitration agreement, then it would also, necessarily, decide the merits of the underly-

ing dispute. Same, too, for the question of illegality in *Buckeye;* on its way to deciding the arbitration agreement's validity, the court would have to decide whether the contract was illegal, and in so doing, it would decide the merits of the entire dispute.

In this case, however, resolution of the unconscionability question will have no bearing on the merits of the underlying employment dispute. It will only, as a preliminary matter, resolve who should decide the merits of that dispute. Resolution of the unconscionability question will, however, decide whether the arbitration agreement *itself* is "valid" under "such grounds as exist at law or in equity for the revocation of any contract." 9 U. S. C. §2. As *Prima Paint* recognizes, the FAA commits those gateway matters, specific to the arbitration agreement, to the court. 388 U. S., at 403–404. Indeed, it is clear that the present controversy over whether the arbitration agreement is unconscionable is *itself severable* from the merits of the underlying dispute, which involves a claim of employment discrimination. This is true for all gateway matters, and for this reason *Prima Paint* has no application in this case.

IV

While I may have to accept the "fantastic" holding in *Prima Paint*, *id.*, at 407 (Black, J., dissenting), I most certainly do not accept the Court's even more fantastic reasoning today. I would affirm the judgment of the Court of Appeals, and therefore respectfully dissent.