Filed 1/17/24

**CERTIFIED FOR PUBLICATION**

**IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA**

**FOURTH APPELLATE DISTRICT**

**DIVISION TWO**

| | |
|---|---|
| J.R., | |
| Plaintiff and Respondent, | E080414 |
| v. | (Super.Ct.No. CVRI2200642) |
| ELECTRONIC ARTS INC., | OPINION |
| Defendant and Appellant. | |

APPEAL from the Superior Court of Riverside County.  Craig Riemer, Judge.

Affirmed.

Keker, Van Nest & Peters, R. James Slaughter, R. Adam Lauridsen, Taylor Reeves, and Reaghan E. Braun for Defendant and Appellant.

McGuire Law and Eugene Y. Turin for Plaintiff and Respondent.

Electronic Arts Inc. (EA) appeals from the trial court's denial of its motion to compel arbitration of claims brought by J.R. II, a minor.  The trial court denied the motion to compel on the ground that J.R. II had exercised his power under Family Code section 6710 to disaffirm all of his contracts with EA, including the arbitration agreement and the delegation provision within it.  On appeal, EA argues that because of the

1

delegation provision, an arbitrator rather than a court should decide issues of arbitrability, including J.R. II's disaffirmance defense. We reject EA's arguments and affirm.

BACKGROUND

EA owns and produces Apex Legends, a video game. Apex Legends can be downloaded for free on various gaming consoles, including Xbox.

On February 14, 2022, J.R. II filed a putative class action against EA, alleging causes of action for unlawful and unfair business practices in violation of the Unfair Competition Law (Bus. & Prof. Code, § 17200 et seq.), violation of the Consumer Legal Remedies Act (Civ. Code, § 1750 et seq.), and unjust enrichment.[1]  J.R. II alleged that EA deceptively induced players of Apex Legends, "especially impressionable minors," to purchase digital game-specific currency in order "to purchase cosmetic items, characters, lootboxes, and other items within the Apex Legends virtual world."

EA moved to stay the action and to compel arbitration under Code of Civil Procedure sections 1281.2 and 1281.4, arguing that J.R. II's claims are covered by an arbitration agreement contained within EA's user agreement, which J.R. II agreed to in order to play Apex Legends. EA also argued that to the extent that J.R. II "challenge[d] the validity, enforceability, or scope of the arbitration provision," the delegation provision within the arbitration agreement "'clearly' and 'unmistakably' provide[d] that those issues must be decided by an arbitrator, not the Court."

---

[1]  Two other minors, including J.R. II's brother, were also named plaintiffs in the complaint. J.R. II's brother voluntarily dismissed his claims, and the court granted EA's motion to compel arbitration of the other minor's claims. Those minors are not parties to this appeal.

2

In a declaration in support of the motion, Anand Nair, EA's director of product management, explained that when a user creates an EA account online, the user must affirmatively agree to the EA user agreement. Users also must affirmatively assent to the latest terms of the user agreement when playing Apex Legends online or when accessing certain online features of the game. "Each time a user is presented with and asked to assent to the latest terms of the User Agreement, the user is able to access and scroll through the entire User Agreement, including its arbitration provision and class action waiver, and is required to check a box or click a button to affirmatively indicate their assent to the terms."

EA's business records confirmed that J.R. II owns Apex Legends and that he last logged into his account to play Apex Legends on February 27, 2022. According to EA, J.R. II affirmatively accepted the user agreement once in August 2020 and again in August 2021. J.R. II last assented to the August 25, 2021, version of the user agreement.

That version of the user agreement provides: "This agreement governs your access and use of products, content and services offered by EA and its subsidiaries ('EA'), such as game software and related updates, upgrades and features, and all online and mobile services, platforms, websites, and live events hosted by or associated with EA (collectively 'EA Services')."

Section 15 of the user agreement is entitled "Dispute Resolutions by Binding Arbitration" and specifies that the Federal Arbitration Act (FAA) (9 U.S.C. § 1 et seq.) "governs the interpretation and enforcement of this Section 15 and any arbitration carried out under this Section." The agreement provides that "[a]ll disputes, claims or

3

controversies arising out of or relating to this Agreement, any EA Service and its marketing, or the relationship between you and EA, including the validity, enforceability, and scope of this Section 15 ('Disputes'), shall be determined exclusively by binding arbitration." The agreement further specifies that the parties may bring claims only in their individual capacity "and not as a plaintiff or class member in any purported class or representative proceeding as to all disputes." (Capitalization and boldfacing omitted.) The agreement further provides that any party's election to arbitrate "shall be final and binding on the other" and that the arbitration shall be administered by the American Arbitration Association under its rules for consumer arbitration.

EA argued in its motion to compel that because J.R. II had assented to the user agreement, the FAA required the court to compel J.R. II to arbitrate his dispute with EA on an individual basis. EA further argued that to the extent that J.R. II challenged the validity of the arbitration agreement, that issue would need to be decided by an arbitrator because of the delegation provision contained within the arbitration agreement. (A delegation provision is an agreement to arbitrate "'gateway' questions of 'arbitrability.'" (*Rent-A-Center, West, Inc. v. Jackson* (2010) 561 U.S. 63, 68-69 (*Rent-A-Center*).))

J.R. II opposed the motion, arguing that he was not bound by the user agreement because he, as a minor, disaffirmed the entire user agreement under Family Code section 6710. He concluded that the disaffirmance "render[ed] any alleged contract between [EA] and [him] invalid."

In a declaration filed in support of the opposition and signed on August 17, 2022, J.R. II stated that he had not played Apex Legends since the commencement of the

4

lawsuit. He downloaded and installed Apex Legends on his Xbox in July 2020. He used his email address to register for an account with EA. J.R. II clicked through the user agreement when he installed Apex Legends. He could not recall clicking through any subsequent user agreement, but he was the only person who accessed that account. J.R. II also stated: "I do not consent to arbitrate any of the claims in this action and disaffirm the entirety of any [user agreement], contract or agreement that was accepted through my EA account."

EA argued in its reply that J.R. II had not successfully disaffirmed the user agreement. E.A. also argued that because of the delegation provision, the determination of whether the contract had been rendered void by disaffirmance must be made by an arbitrator, not by the court. Nair submitted a declaration in support of the reply and stated that, according to EA's records, J.R. II had logged in to his online EA account after February 14, 2022, and had last logged in to play Apex Legends on February 27, 2022.

The trial court allowed J.R. II to file a surreply. J.R. II argued in the surreply that the evidence EA had submitted about J.R. II's last login did not undermine his disaffirmance of the user agreement, because the last login occurred before he disaffirmed the agreement.

At the hearing on the motion, EA argued that enforceability of the delegation provision was not properly before the court because J.R. II did not make "a contractual challenge that is specific to that delegation clause." J.R. II's counsel countered that J.R. II had specifically argued that he disaffirmed the entire user agreement "and specifically the delegation clause, therein, has been disaffirmed." In response to questions by the

5

court, EA's counsel contended that if J.R. II said "'the contract as a whole, including the delegation clause, has been disaffirmed,'" "then the Court decides the issue," but if J.R. II said "'the contract in its entirety has been disaffirmed and is, therefore, unenforceable,'" then "the arbitrator decides the issue." The court disagreed, reasoning that EA's position elevated "form over substance" and that it made "no sense" to claim that if J.R. II added the four words "'and the delegation provision,'" then "it changes who it is that decides whether this contract and all of its subparts have been disaffirmed."

The trial court found that the language of the delegation provision "is clear and unmistakable," but the court nevertheless found the provision to be ineffective because the contract was revocable pursuant to Family Code section 6710. The court further found that J.R. II "unequivocally disaffirmed his agreement, both by discontinuing his use of [EA's] service shortly after the complaint was filed, and by expressly disaffirming the contract in his declaration filed [August 17, 2022]. Therefore, there is no arbitration agreement to enforce." The court accordingly denied EA's motion to compel as to J.R. II.

## DISCUSSION

EA argues that the trial court was not authorized to resolve the dispute concerning whether J.R. II had disaffirmed the arbitration agreement, because J.R. II did not specifically challenge the validity of the delegation provision. We disagree.

### A.     *The FAA*

The user agreement is governed by the FAA, which embodies a "'liberal policy favoring arbitration.'" (*AT&T Mobility LLC v. Concepcion* (2011) 563 U.S. 333, 346.)

6

The FAA provides that a written agreement to arbitrate disputes arising out of a transaction involving interstate commerce "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." (9 U.S.C. § 2.) The federal statute "places arbitration agreements on an equal footing with other contracts, [citation], and requires courts to enforce them according to their terms, [citation]." (*Rent-A-Center*, *supra*, 561 U.S. at pp. 67-68.)

"There are two types of validity challenges under [9 U.S.C.] § 2: 'One type challenges specifically the validity of the agreement to arbitrate,' and '[t]he other challenges the contract as a whole, either on a ground that directly affects the entire agreement (*e.g.*, the agreement was fraudulently induced), or on the ground that the illegality of one of the contract's provisions renders the whole contract invalid.'" (*Rent-A-Center*, *supra*, 561 U.S. at p. 70.) The United States Supreme Court has "held that only the first type of challenge is relevant to a court's determination whether the arbitration agreement at issue is enforceable." (*Ibid.*; *Prima Paint Corp. v. Flood & Conklin Mfg. Co.* (1967) 388 U.S. 395, 403-404 (*Prima Paint*); *Buckeye Check Cashing, Inc. v. Cardegna* (2006) 546 U.S. 440, 444-445.) In other words, "a party's challenge to another provision of the contract, or to the contract as a whole, does not prevent a court from enforcing a specific agreement to arbitrate." (*Rent-A-Center*, at p. 70.) Thus, arbitration agreements are severable from the remainder of the contract as a matter of substantive federal arbitration law. (*Id.* at pp. 70-71, 75, fn. 4.)

The parties to an arbitration agreement can agree in a delegation provision "to arbitrate 'gateway' questions of 'arbitrability,' such as whether the parties have agreed to

7

arbitrate or whether their agreement covers a particular controversy." (*Rent-A-Center*, *supra*, 561 U.S. at pp. 68-69.)  An agreement to arbitrate a gateway issue—otherwise known as a delegation provision—"is simply an additional, antecedent agreement the party seeking arbitration asks . . . [a] court to enforce, and the FAA operates on this additional arbitration agreement just as it does on any other.  The additional agreement is valid under [9 U.S.C.] § 2 'save upon such grounds as exist at law or in equity for the revocation of any contract.'"  (*Id.* at p. 70; *Henry Schein, Inc. v. Archer & White Sales, Inc.* (2019) 586 U.S. __ [139 S.Ct. 524, 529].)

A party opposing enforcement of a delegation provision under the FAA must "challenge[] the delegation provision specifically."  (*Rent-A-Center*, *supra*, 561 U.S. at p. 72; *Najarro v. Superior Court* (2021) 70 Cal.App.5th 871, 888.)  Absent such a challenge, a court must treat the delegation provision as valid and enforce it, "leaving any challenge to the validity of [the arbitration agreement or] the [a]greement as a whole for the arbitrator." (*Rent-A-Center*, at p. 72.)

We independently review an order denying a petition to compel arbitration under Code of Civil Procedure section 1281.2 if the facts concerning the petition are undisputed.  (*Jackpot Harvesting, Inc. v. Applied Underwriters, Inc.* (2019) 33 Cal.App.5th 719, 729.)  "We do not review the trial court's reasoning, but rather its ruling.  A trial court's order is affirmed if correct on any theory, even if the trial court's reasoning was not correct."  (*J.B. Aguerre, Inc. v. American Guarantee & Liability Ins. Co.* (1997) 59 Cal.App.4th 6, 15-16 (*J.B. Aguerre*).)

8

B.    *Analysis*

EA argues that the trial court erred by denying the motion to compel because J.R. II failed to challenge the validity of the delegation provision specifically.  J.R. II does not deny that the arbitration agreement contained a delegation provision.  He instead contends that he did challenge the validity of the delegation provision specifically when he disaffirmed any agreement that he entered with EA.[2]  We agree.

In California, the law "shields minors from their lack of judgment and experience and confers upon them the right to avoid their contracts in order that they may be protected against their own improvidence and the designs and machinations of other people, thus discouraging adults from contracting with them." (*Sparks v. Sparks* (1950) 101 Cal.App.2d 129, 137.)  To this end, Family Code section 6700 provides that "a minor may make a contract in the same manner as an adult, subject to the power of disaffirmance" set forth in Family Code section 6710.

---

[2]    EA claims that J.R. II forfeited his argument by not making it in the trial court. EA's forfeiture claim reflects a misunderstanding of the asymmetrical burdens on the parties to an appeal.  An appellant bears the burden of demonstrating both error and prejudice in order to obtain reversal of the judgment or order under review.  (*Jameson v. Desta* (2018) 5 Cal.5th 594, 608-609.)  But we may affirm on any ground supported by the record (*J.B. Aguerre*, *supra*, 59 Cal.App.4th at pp. 15-16), including grounds not raised by the respondent, and even if the respondent does not file a brief (*Fleming Distribution Co. v. Younan* (2020) 49 Cal.App.5th 73, 84, fn. 8; *Smith v. Smith* (2012) 208 Cal.App.4th 1074, 1077-1078; *Kriegler v. Eichler Homes, Inc.* (1969) 269 Cal.App.2d 224, 226-227).  "Thus, *respondent* can assert a new theory on appeal in order to establish that the judgment was correct on that theory *unless* doing so would unfairly prejudice appellant by depriving appellant of the opportunity to litigate an *issue of fact*." (Eisenberg et al., Cal. Practice Guide:  Civil Appeals and Writs (The Rutter Group 2023) ¶ 8:241.)  Our consideration of J.R.II's argument does not cause any such unfair prejudice, so it does not matter whether the argument was raised in the trial court.

Family Code section 6710 provides that "[e]xcept as otherwise provided by statute, a contract of a minor may be disaffirmed by the minor before majority or within a reasonable time afterwards." "No specific language is required to communicate an intent to disaffirm. 'A contract (or conveyance) of a minor may be avoided by any act or declaration disclosing an unequivocal intent to repudiate its binding force and effect.'" (*Berg v. Traylor* (2007) 148 Cal.App.4th 809, 820 (*Berg*); *Coughenour v. Del Taco, LLC* (2020) 57 Cal.App.5th 740, 748.)

J.R. II stated in the declaration submitted in opposition to EA's motion to compel that he "disaffirm[s] the entirety of any [user agreement], contract or agreement that was accepted through [his] EA account." J.R. II thereby unequivocally disaffirmed "*any . . . contract or agreement*" that he entered into with EA through his EA account. (Italics added.) His disaffirmance was not limited to the user agreement. Thus, although the user agreement, the arbitration agreement, and the delegation provision are severable agreements under federal arbitration law (*Rent-A-Center*, *supra*, 561 U.S. at pp. 70-71), it is equally true that J.R. II disaffirmed all three of those agreements, because all three of them were accepted through his EA account. The consequence of the disaffirmance in J.R. II's declaration is that there are no agreements between J.R. II and EA that J.R. II accepted through his EA account but has not disaffirmed. Therefore, as the trial court concluded, "there is no arbitration agreement to enforce."

EA's contrary arguments are meritless. EA contends that J.R. II's disaffirmance of "any . . . contract or agreement" cannot and does not "refer specifically to the delegation clause," because the word "any" "*negates* specificity as it means 'one or some

10

indiscriminately of whatever kind.'" It is not clear whether EA is making the substantive argument that J.R. II has not in fact disaffirmed the delegation provision or the formal argument that J.R. II has violated a technical requirement that he use the words "delegation provision" when doing so. Either way, the argument fails.

Substantively, another part of the same definition cited by EA shows why the argument lacks merit: "Any" means "EVERY." (Merriam-Webster Online Dict. <https://www.merriam-webster.com/dictionary/any> [as of Jan. 16, 2024].) By disaffirming "any" contract or agreement accepted through his EA account, J.R. II disaffirmed *every* such contract, thereby referring specifically to every single one of them and revoking them all, including but not limited to the delegation provision. EA does not deny that the delegation provision is a contract or agreement that J.R. II accepted through his EA account. Nor does EA offer any interpretation of J.R. II's declaration according to which it does not mean that he disaffirmed every contract or agreement that he accepted through his EA account. It follows that J.R. II disaffirmed the delegation provision. Thus, interpreted as the substantive claim that J.R. II did not in fact disaffirm the delegation provision, EA's argument fails.

Formally, there is no requirement that J.R. II use the words "delegation provision" when disaffirming it. California law is to the contrary. (*Berg*, *supra*, 148 Cal.App.4th at p. 820 ["No specific language is required to communicate an intent to disaffirm"].) EA instead relies on federal cases concerning the severability of delegation provisions, such as *Prima Paint* and *Rent-A-Center*, but they too do not impose such a requirement. Rather, what is required to overcome a delegation provision and thus authorize a court to

11

decide a gateway issue is a contract defense that "go[es] to the validity of the delegation provision." (*Rent-A-Center*, *supra*, 561 U.S. at p. 73.)  In *Rent-A-Center*, for example, the plaintiff employee attacked the arbitration agreement on the ground that it applied to "claims an employee was likely to bring—contract, tort, discrimination, and statutory claims" but not to claims an employer "was likely to bring—intellectual property, unfair competition, and trade secrets claims." (*Ibid.*)  "This one-sided-coverage argument" did not overcome the delegation provision, because it "clearly did not go to the validity of the delegation provision." (*Ibid.*)  That is, the issue was not that the plaintiff had failed to include the magic words "delegation provision" when presenting the argument.  What mattered was that the argument in substance did not relate to the enforceability of the delegation provision, considered as a severable and separate contract.

In contrast, J.R. II's disaffirmance of "any . . . contract or agreement" accepted through his EA account does "go to the validity of the delegation provision" (*Rent-A-Center*, *supra*, 561 U.S. at p. 73), because the delegation provision is a contract or agreement accepted through his EA account.  His disaffirmance of the delegation provision is unambiguous and unequivocal.  Nothing more is required.

EA also argues that if J.R. II's disaffirmance of "any . . . contract or agreement" is sufficient, then "the severability rule laid down in *Prima Paint* and *Rent-A-Center* means nothing."  The argument is baseless because our analysis in no way conflicts with or undermines the severability rule.  The arbitration agreement is severable from the user agreement containing it, and the delegation provision is severable from the arbitration agreement containing it.  (*Rent-A-Center*, *supra*, 561 U.S. at pp. 70-72.)  Because of their

12

severability, the delegation provision might be enforceable even if the arbitration agreement as a whole is not, and the arbitration agreement might be enforceable even if the user agreement as a whole is not. As a result, defenses that go to enforceability of one agreement might not affect enforceability of another. But if a defense does go to all three severable agreements, then that defense is sufficient to defeat the delegation clause and authorize the court to decide the defense's validity. For the reasons already given, J.R. II's disaffirmance of "any . . . contract or agreement" accepted through his EA account is such a defense.

Because J.R. II challenged the validity of the delegation provision specifically by disaffirming it, the trial court was authorized to assess the validity of J.R. II's disaffirmance. We accordingly conclude that the trial court did not err by denying EA's motion to compel arbitration as to J.R. II.

DISPOSITION

The November 2, 2022, order denying EA's motion to compel arbitration as to J.R. II is affirmed. J.R. II shall recover his costs of appeal.

CERTIFIED FOR PUBLICATION

MENETREZ
J.

We concur:


FIELDS
Acting P. J.

RAPHAEL
J.

13