# United States Court of Appeals
**FOR THE DISTRICT OF COLUMBIA CIRCUIT**

Argued January 11, 2021         Decided August 3, 2021

No. 20-7043

COMMUNICATIONS WORKERS OF AMERICA, AFL-CIO,
APPELLANT

v.

AT&T INC.,
APPELLEE

Appeal from the United States District Court
for the District of Columbia
(No. 1:19-cv-01220)

*Michael T. Anderson* argued the cause for appellant. With him on the briefs was *Arlus J. Stephens*.

*Maurice Baskin* argued the cause and filed the brief for appellee.

Before: SRINIVASAN, *Chief Judge*, TATEL and RAO, *Circuit Judges*.

Opinion for the Court filed by *Chief Judge* SRINIVASAN.

SRINIVASAN, *Chief Judge*: This case arises out of a contract between AT&T and a union representing company employees. The contract provides for arbitration of disputes over certain subjects. When a dispute arose between the parties following AT&T's acquisition of Time Warner, the union invoked the contract's arbitration clause. The company refused to submit to arbitration, prompting the union to bring an action seeking to compel arbitration. The district court determined that it had jurisdiction to decide whether the dispute is arbitrable and then held that it is not.

We conclude that the parties' agreement delegates threshold questions of arbitrability to an arbitrator. The question whether the parties' dispute falls within the contract's arbitration clause, then, is for an arbitrator, not a court, to decide. It follows that the district court lacked jurisdiction to determine whether the parties' dispute must be submitted to arbitration.

I.

Communications Workers of America, AFL-CIO (the Union) is the certified union for non-management employees of AT&T, Inc. In April 2017, the Union and AT&T entered into a contract governing certification of the Union and the relationship between the parties. *See* Memorandum of Agreement Regarding Neutrality and Card Check Recognition (the Agreement), App. 15–21. The Agreement requires the parties to arbitrate disputes over "the description of an appropriate unit for bargaining" and the definition of "non-management" employees. *Id.* ¶¶ 2(c), 3(c)(1)–(2), 9, App. 15–16, 19. All other disputes arising under the contract "shall not be subject to arbitration." *Id.* ¶ 9, App. 19.

For disputes that are subject to arbitration, the Agreement requires that they "be submitted to arbitration administered by, and in accordance with, the rules of the American Arbitration Association (AAA)." *Id.* ¶ 3(c)(1), App. 16. The AAA's Labor Arbitration Rules in turn provide that "[t]he arbitrator shall have the power to rule on his or her own jurisdiction, including any objections with respect to the existence, scope, or validity of the arbitration agreement." AAA Lab. Arb. R. 3(a), App. 57.

After AT&T acquired Time Warner in June 2018, the Union initiated discussions about "appropriate potential bargaining units in the newly acquired company." App. 80. The parties, though, could not agree on which employees count as non-management workers (and are thus subject to the Agreement). The Union demanded arbitration under the Agreement, but AT&T disagreed that the Agreement required arbitration of the dispute.

The Union brought an action in the district court seeking to compel arbitration. AT&T moved to dismiss the Union's complaint for failure to state a claim. In AT&T's view, the parties' dispute does not fall within the categories of disputes subject to arbitration under the Agreement—i.e., disputes about the scope of the bargaining unit and the definition of non-management employees. The Union filed a cross-motion to compel arbitration. It argued that the dispute fits within the scope of the Agreement's arbitration coverage, and also that, under the Agreement, the question whether the dispute is arbitrable must be decided by an arbitrator rather than a court.

The district court granted AT&T's motion to dismiss and denied the Union's motion to compel arbitration. The court agreed with AT&T that the parties' dispute does not lie within the categories of arbitrable disputes under the Agreement. And

the court held that it (as opposed to the arbitrator) could make that threshold determination of arbitrability. The Union now appeals.

## II.

Two lines of precedent control the outcome of this case. First, our circuit precedent compels concluding that an arbitration agreement's incorporation of the AAA rules constitutes an assignment of the question of arbitrability—i.e., whether a given dispute is subject to arbitration—to the arbitrator. Second, when there is such an assignment, Supreme Court precedent forbids courts from speaking to the question of arbitrability and requires leaving it strictly to the arbitrator. The result here is that the question whether the parties' dispute is arbitrable must be decided by an arbitrator, not a court.

## A.

Under the Federal Arbitration Act, "arbitration is a matter of contract, and courts must enforce arbitration contracts according to their terms." *Henry Schein, Inc. v. Archer & White Sales, Inc.*, 139 S. Ct. 524, 529 (2019). "Applying the Act," the Supreme Court has "held that parties may agree to have an arbitrator decide not only the merits of a particular dispute but also gateway questions of arbitrability, such as whether the parties['] . . . agreement covers a particular controversy." *Id.* (internal quotation marks omitted). Such threshold arbitrability questions are generally presumed to be for a court to decide, *see BG Grp. PLC v. Republic of Argentina*, 572 U.S. 25, 34 (2014), but "parties may delegate [them] to the arbitrator" if their "agreement does so by 'clear and unmistakable evidence,'" *Henry Schein*, 139 S. Ct. at 530 (quoting *First Options of Chi., Inc. v. Kaplan*, 514 U.S. 938, 944 (1995)).

We have held that the requisite clear and unmistakable delegation occurs when the parties' agreement incorporates arbitral rules that in turn assign questions of arbitrability to the arbitrator. *See Chevron Corp. v. Ecuador*, 795 F.3d 200, 207–08 (D.C. Cir. 2015); *see also LLC SPC Stileks v. Republic of Moldova*, 985 F.3d 871, 878–79 (D.C. Cir. 2021). Here, the Agreement expressly incorporates the AAA rules for arbitration, and those rules in turn assign threshold questions of arbitrability to the arbitrator. Under our precedents, then, the parties clearly and unmistakably delegated arbitrability questions to the arbitrator by incorporating the AAA rules. Our decision in *Chevron Corp.* compels that conclusion.

*First*, the language of the arbitral rules in *Chevron Corp.* and in this case leaves no room for distinction. In *Chevron Corp.*, we considered the United Nations Commission on International Trade Law's (UNCITRAL's) arbitral rules. Those rules provide that "[t]he arbitral tribunal shall have the power to rule on objections that it has no jurisdiction, including any objections with respect to the existence or validity of the arbitration clause." *Chevron Corp.*, 795 F.3d at 207 (alteration in original) (quoting UNCITRAL Arb. Rs. art. 21 (1976)). The AAA rules are materially identical, stating that "[t]he arbitrator shall have the power to rule on his or her own jurisdiction, including any objections with respect to the existence, scope, or validity of the arbitration agreement." AAA Labor Arb. R. 3(a), App. 57; *see Dist. No. 1, Pac. Coast Dist., Marine Eng'rs' Ben. Ass'n, AFL-CIO v. Liberty Maritime Corp.*, 998 F.3d 449, 461 (D.C. Cir. 2021) (AAA rules and UNCITRAL rules contain "parallel provision[s] assigning to an arbitrator the authority to rule on her own jurisdiction").

*Second*, the contractual language incorporating the UNCITRAL rules in *Chevron Corp.* mirrors the language of the Agreement's incorporation of the AAA rules here. In

*Chevron Corp.*, a bilateral investment treaty between the United States and Ecuador provided that "the investor company may submit a matter to arbitration 'in accordance with the Arbitration Rules of the United Nations Commission on International Trade Law (UNCITRAL).'" 795 F.3d at 207 (quoting treaty). And here, the Agreement provides that certain disputes "shall be submitted to arbitration administered by, and in accordance with, the rules of the American Arbitration Association (AAA)." Agreement ¶ 3(c)(1), App. 16. If the contract in *Chevron Corp.* incorporated the UNCITRAL rules by reference, *see* 795 F.3d at 207, then the Agreement in this case likewise incorporated the AAA rules by reference.

In short, because the contractual language incorporating the arbitral rules is the same in this case and *Chevron Corp.*, and because the relevant language of the arbitral rules is also the same in the two cases, here, as in *Chevron Corp.*, the parties have clearly and unmistakably "consented to allow the arbitral tribunal to decide issues of arbitrability." *Id.* at 208; *see Dist. No. 1*, 998 F.3d at 461 ("[V]irtually every court of appeals to address the issue agrees that when parties expressly incorporate the AAA rules, they thereby clearly and unmistakably delegate to an arbitrator the power to decide gateway questions of arbitrability . . . .").

## B.

When, as in this case, "the parties' contract delegates the arbitrability question to an arbitrator, a court may not override the contract. In those circumstances, a court possesses no power to decide the arbitrability issue." *Henry Schein*, 139 S. Ct. at 529. Significantly, that rule holds "even if the court thinks that the argument that the arbitration agreement applies to a particular dispute is wholly groundless." *Id.* Still, the court

must stay its hand and allow the arbitrator to decide whether the parties' arbitration agreement covers the dispute.

AT&T nonetheless contends that a court should decide whether the dispute in this case is subject to arbitration under the Agreement. The company describes the parties' underlying dispute in this case as involving "new acquisitions," and submits that "the plain language of the [Agreement] establishes that the parties did not intend to delegate new entity acquisition issues to an arbitrator." Appellee's Br. 18. "Given this," AT&T maintains, "there is no basis for finding 'clear and unmistakable' evidence of delegation by the parties of any arbitrability question to an arbitrator, and the district court properly decided the question of arbitrability." *Id.*

That argument would seem to run headlong into the Supreme Court's decision in *Henry Schein*. Under AT&T's approach, a court first assesses whether the parties "intend[ed] to delegate [the] issues [at hand] to an arbitrator." *Id.* If not, the "court properly decide[s] the question of arbitrability," *id.*—i.e., whether the dispute must be submitted to arbitration. That approach is circular: in determining who decides (the arbitrator or the court) whether a particular dispute must be submitted to arbitration, the court first determines whether the particular dispute must be submitted to arbitration. Yet if the court were to do so, it would have already decided that it (and not the arbitrator) determines whether the underlying dispute must be submitted to arbitration.

*Henry Schein* charts the opposite course. The Supreme Court described the "who decides" question as an "'antecedent'" one—that is, one to be decided first. 139 S. Ct. at 529, 531 (quoting *Rent-A-Center, West, Inc. v. Jackson*, 561 U.S. 63, 70 (2010)). In accordance with that understanding, the Court explained that "a court possesses no power to decide the

arbitrability issue" if "the parties' contract delegates the arbitrability question to an arbitrator." *Id.* In other words, the court must first determine if the parties' agreement provides for the arbitrator to decide whether the underlying dispute must be submitted to arbitration, and if so, the court "possesses no power" to address the issue. *Id.* Under AT&T's approach, by contrast, in determining whether the court has power to address the arbitrability of the underlying dispute, the court would decide the very matter it may lack power to address.

AT&T attempts to distinguish *Henry Schein* based on the proportion of issues that the parties agree to submit to arbitration. In the company's view, the rule of *Henry Schein* applies in the case of "broad arbitration agreements with limited exceptions." Appellee's Br. 19 (emphasis removed). But this case, AT&T asserts, involves "an agreement limiting arbitration to one narrow band of disputes." *Id.* at 21.

Once again, the company's argument is difficult to reconcile with *Henry Schein*. Any arbitration agreement will need to define the set of issues that it makes subject to arbitration. And however broad or narrow that set may be, questions can arise at the margins as to whether a particular dispute fits within its boundaries. In that event, *Henry Schein* holds, if the parties clearly and unmistakably assign threshold arbitrability questions to the arbitrator, then the question whether the "particular dispute" is arbitrable is exclusively one for the arbitrator, not a court. 139 S. Ct. at 529.

In addition, the criterion suggested by AT&T—how broad the arbitration agreement is considered to be—would raise significant questions of administration. How are courts to measure whether an arbitration agreement is sufficiently broad? Would breadth be based strictly on an effort to count the number of issues that are subject to arbitration against some

(seemingly elusive) count of the number of issues that are not? If the agreement contemplates arbitration of a relatively small number of issues, but those issues will likely account for the bulk of the disputes between the parties, would the arbitration agreement count as a broad one?  And apart from the number of the issues and the frequency with which they arise, how about their importance to the parties:  should it matter how fundamental the arbitrable issues may seem to the contracting parties, and, if so, how would that be assessed?

Rather than adopt an approach calling for an uncertain inquiry into the relative breadth of an arbitration agreement, we adhere to the straightforward rule we understand *Henry Schein* to have established:  once the parties subject some set of issues to an arbitrator for resolution, and once the parties clearly and unmistakably assign to an arbitrator the authority to decide whether disputes fit within that set of issues, the question whether a particular dispute is arbitrable is strictly for the arbitrator, not a court.  Pursuant to that understanding, the district court in this case lacked jurisdiction to decide whether the parties' dispute should be submitted to arbitration.  That is for the arbitrator to decide.

\* \* \* \* \*

For the foregoing reasons, we vacate the judgment of the district court and remand for further proceedings consistent with this opinion.

*So ordered.*