Filed 9/27/21

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SEVEN

| | |
|---|---|
| BANC OF CALIFORNIA, NATIONAL ASSOCIATION, Petitioner, v. THE SUPERIOR COURT OF LOS ANGELES COUNTY, Respondent; N977CB HOLDINGS, LLC et al., Real Parties in Interest. | B310190 (Los Angeles County Super. Ct. No. 19SMCV01580) |

ORIGINAL PROCEEDINGS in mandate. H. Jay Ford III Judge. Petition granted.

Grignon Law Firm LLP, Margaret M. Grignon, Anne M. Grignon; Kibler Fowler & Cave LLP, Michael Kibler, Matthew J. Cave, Adam C. Pullano for Petitioner.

No appearance for Respondent.

Skylar Kirsh, LLP, Justin M. Goldstein, Louise D. Nutt for Real Parties in Interest.

_____

Banc of California, National Association (Banc) loaned N977CB Holdings, LLC (Holdings) $3.5 million to facilitate Holdings's purchase of a commercial aircraft (aircraft). The parties executed seven documents in connection with the loan (loan documents) and an eighth agreement, executed seven weeks later, concerning Banc's charter of Holdings's aircraft through a charter company, Jet Edge (aircraft usage agreement).[1] After Holdings allegedly defaulted on the loan, Banc filed this action alleging Holdings breached the terms of the loan documents in various respects. Banc also alleged it had a right to sell the aircraft in the possession of Jet Edge as collateral for the loan and to recover money owed by Jet Edge to Holdings based on a subordination agreement. Banc asserted additional claims for breach of the aircraft usage agreement and conversion, alleging Holdings refused to return Banc's remaining deposit under the aircraft usage agreement.

Holdings and Jet Edge petitioned to compel arbitration and stay the litigation based on an arbitration clause in the aircraft usage agreement. Although Banc later dismissed its two causes of action based on the aircraft usage agreement (leaving only the claims based on breach of the loan documents), the trial granted the petition as to the threshold question of arbitrability, finding the American Arbitration Association (AAA) rules provided for

_____

[1] Banc named as a defendant Western Air Charter, Inc., doing business as Jet Edge.

delegation of the determination of whether the parties' dispute arose out of the arbitration clause, and therefore the arbitrator should decide whether Banc's claims were arbitrable.

Banc seeks a writ of mandate compelling the trial court to vacate its order granting Holdings's petition to compel arbitration. Banc asserts the trial court erred in relying on the Supreme Court's decision in *Henry Schein, Inc. v. Archer and White Sales, Inc.* (2019) ___ U.S. ___ [139 S.Ct. 524, 529] (*Schein*), which held that where an arbitration clause contains a delegation provision, the arbitrator should decide the threshold issue of arbitrability even if the argued basis for arbitration is "wholly groundless." We agree with Banc. In *Schein*, the court considered who should decide whether the parties' dispute arising from a specific contract with an arbitration clause was arbitrable; here, the question on Holdings's petition to compel arbitration was whether the parties agreed to arbitrate their dispute over the loan documents, which did not have arbitration clauses, a question the court must decide in the first instance. We grant the petition.

## FACTUAL AND PROCEDURAL BACKGROUND

A. *The Agreements Between Banc and Holdings*

On June 29, 2016 Banc loaned Holdings $3.5 million to facilitate Holdings's purchase of an aircraft. In connection with the loan, the parties executed seven documents on June 29. First, Holdings executed and delivered to Banc a promissory note for $3.5 million, providing for 4.25 percent interest on the unpaid principal balance. Holdings agreed to make monthly interest payments and yearly payments of principal starting on July 5,

3

2017, with payment of all outstanding principal plus interest on July 5, 2021.  The promissory note included a clause providing with respect to the promissory note and related documents that "[i]f there is a lawsuit," Holdings consented to jurisdiction in any court in Idaho or Los Angeles County.  Further, the parties waived their right to a jury trial "in any action, proceeding, or counterclaim brought by either [Banc] or [Holdings] against the other."

Second, Banc and Holdings executed an aircraft and business loan agreement (loan agreement).  The loan agreement required Holdings to provide specified financial reports to Banc each year.  Further, the loan agreement provided that "any dispute, claim or controversy . . . between [Banc] and [Holdings] or related to the Loan, whether sounding in contract, tort or otherwise, that becomes the subject of a judicial action shall be heard by a referee pursuant to Section 638 of the California Code of Civil Procedure,"[2] and that the referee "may (i) hear and determine all of the issues, whether of fact or law, and (ii) ascertain any fact necessary to enable the court to determine an action or proceeding in any Controversy or matter related to a Controversy."  The parties agreed the loan agreement would serve as a "reference agreement" under section 638 and could be filed with the court as the basis for a motion for the controversy to be heard by a referee.  A venue provision stated, "If there is a lawsuit, [Holdings] agrees upon [Banc's] request to submit to the jurisdiction of the courts of Los Angeles County, State of California."  Further, the parties waived their right to a jury trial.

---

[2]     All further undesignated statutory references are to the Code of Civil Procedure.

4

Third, Holdings executed an aircraft security agreement (security agreement) granting Banc a security interest and lien on the aircraft (a specific Gulfstream jet), two engines, and other aircraft parts, as well as specified documents relating to the aircraft, engines, and parts. Under the agreement, Holdings was required to obtain insurance naming Holdings and Banc as insureds. Banc perfected its security interest by recording it, providing notice to the Federal Aviation Administration, and filing a Uniform Commercial Code (UCC) financing statement with the Delaware Secretary of State. The security agreement included a venue provision stating, "If there is a lawsuit, [Holdings] consents to the jurisdiction of all state and federal courts located within California." The parties also waived their right to a jury trial.

Fourth, Holdings executed and delivered to Banc on the same date a collateral assignment of rights (assignment agreement), assigning to Banc a security interest in the fifth agreement, an aircraft services and charter management agreement between Holdings and Jet Edge (charter agreement). The assignment agreement required Holdings to obtain Banc's consent before settling any dispute under the charter agreement. Further, Banc was authorized on behalf of Holdings to enforce any rights Holdings had to collect amounts due to Holdings under the charter agreement. The assignment agreement incorporated the terms of the jury waiver in the loan agreement. The charter agreement provided that the parties to the agreement "submit to the non-exclusive jurisdiction for litigation arising out of this Agreement to the courts of Delaware." Banc perfected its security interest in the charter agreement by filing a UCC financing statement with the Delaware Secretary of State.

5

Sixth, Holdings executed and delivered to Banc an agreement to provide insurance (insurance agreement), under which Holdings agreed to insure the collateral set forth in the security agreement. The one-page agreement did not address jurisdiction. And seventh, Banc, Holdings, and Jet Edge executed a subordination and standstill agreement (subordination agreement), providing that in consideration of the $3.5 million loan, Jet Edge agreed to subordinate "any and all claims or liens now or hereafter attaching to the [c]ollateral arising from [Jet Edge's] [i]nterest or otherwise . . . ." The subordination agreement provided that "[i]f there is a lawsuit," Jet Edge consents to jurisdiction in all California state and federal courts and venue in Los Angeles County, California. None of the seven loan documents contained an arbitration agreement.

Seven weeks later—on August 18, 2016—Banc and Holdings entered into the aircraft usage agreement, which allowed Banc and its authorized purchasers to charter air transportation on Holdings's aircraft at a discounted price based on Banc's planned usage of at least 150 hours of flight time in each 12-month period following execution of the agreement. The agreement provided that Banc would give Holdings a $480,000 deposit upon execution of the agreement and annually thereafter.

The aircraft usage agreement included an arbitration provision in section 6.5 that stated, "In the event of any dispute or controversy between the Parties relating to this Agreement (other than a dispute or controversy seeking injunctive or equitable relief), the matter shall be submitted to arbitration for resolution, which arbitration shall be conducted in Los Angeles, CA, before one arbitrator, in accordance with the rules of the

6

American Arbitration Association (Commercial) then in effect." The "Agreement" was defined as the "Aircraft Usage Agreement." The aircraft usage agreement also contained a clause titled "Governing Law and Court Jurisdiction" under which Banc and Holdings consented to jurisdiction in California federal courts if the courts had jurisdiction, and if not, to California state courts.

The aircraft usage agreement provided for a one-year term, to be automatically renewed unless either party gave notice of termination within 30 days of the agreement's anniversary date. However, the agreement provided that several provisions, including the arbitration clause in section 6.5 would "survive beyond the end of the Term of this Agreement." Banc terminated the agreement by its July 17, 2017 "Notice of Non-Renewal." In the notice of non-renewal, Banc requested Holdings return the remaining deposit held by Holdings, in the amount of $189,761.71.

B.      *The Lawsuit and Petition To Compel Arbitration*

On September 10, 2019 Banc filed this action against Holdings, Jet Edge, and 20 Doe defendants. The first amended complaint alleged in the first cause of action that Holdings breached the promissory note, the loan agreement, the security agreement, the assignment agreement, the insurance agreement, the UCC financing statements, the notices filed with the Federal Aviation Administration, "and all other documents executed in connection with the Bank's Loan to [Holdings]." Banc sought $3 million owed on the loan; the right to sell or otherwise dispose of the aircraft to enforce Banc's security interest under the security agreement; and the right to enforce any rights Banc held

7

under the charter agreement, including to recover of any amounts owed to Holdings under that agreement.

The second cause of action alleged Jet Edge's breach of the charter agreement and subordination agreement, including the failure of Jet Edge to pay to Banc amounts Jet Edge owed to Holdings under the charter agreement.

The third cause of action against Holdings alleged breach of the aircraft usage agreement arising from Holdings's refusal to return $189,761.71 that Holdings held in deposit for Banc after Banc gave notice it was not renewing the agreement. The fourth cause of action alleged a claim for conversion against Holdings based on Holdings' refusal to return the remaining deposit under the aircraft usage agreement.

On April 3, 2020 Holdings filed a petition to compel arbitration under section 1281.2 to arbitrate Banc's claims based on the arbitration clause in the aircraft usage agreement. Holdings asserted that "[w]ithout question" the third and fourth causes of action were subject to arbitration, and even if the first and second causes of action were not subject to arbitration, they should be stayed pending completion of the two arbitrable claims. Jet Edge, which was not a party to the aircraft usage agreement, joined the petition and motion to stay. On August 5, 2020, instead of filing an opposition to the petition, Banc voluntarily dismissed without prejudice its third cause of action for breach of the aircraft usage agreement and fourth cause of action for conversion. In its reply brief, Holdings asserted the arbitration clause in the aircraft usage agreement applied to the parties' disputes regarding the loan documents because the loan documents related to the aircraft usage agreement and the documents were signed "around the same time." Holdings argued

8

the language in the arbitration clause requiring arbitration of "any dispute or controversy between the Parties relating to this Agreement" should be construed broadly to include the dispute over the loan documents.[3] (Underlining and boldface omitted.) Further, Holdings asserted the AAA rules (applicable under the arbitration clause) delegated to the arbitrator the power to decide the scope and validity of the arbitration clause and the arbitrability of any claim.

Banc filed a sur-reply brief, arguing Holdings improperly raised new arguments in its reply brief as to why the first and second causes of action had not become moot by dismissal of the third and fourth causes of action. Banc asserted the arbitration clause in the aircraft usage agreement limited its application to disputes relating to "this Agreement." Further, the loan documents were not related to the aircraft usage agreement, and most of the loan documents provided for the courts to resolve any disputes. Moreover, the court, not the arbitrator, should decide the threshold question of the arbitrability of Banc's claims.

On August 18, 2020 the trial court issued a tentative ruling denying Holdings's petition to compel arbitration. However, the court allowed the parties to file supplemental briefs. Holdings argued in its supplemental brief that where there is a delegation clause, the arbitrator must decide the threshold issue of

---

[3] Holdings also relied on the declaration of Robert Estrin filed with its petition in which Estrin stated that Banc's counsel on a telephone call "told [him] that [Banc] agreed to provide the loan to [Holdings] in part because of the Aircraft Usage Agreement." The trial court in its initial tentative ruling rejected Holdings's argument, finding the declaration was "insufficient" to conclude the arbitration provision applied to breach of the loan documents.

arbitrability, even if the argument for arbitration is "wholly groundless," citing to *Schein, supra,* 139 S.Ct. at page 529. In response, Banc argued that four of the seven loan documents contained choice-of-venue provisions requiring Holdings to submit to the jurisdiction of the California courts. Banc distinguished *Schein* on the ground it involved a single agreement with an arbitration clause, whereas Holdings sought to compel arbitration of claims arising from unrelated agreements that did not contain arbitration clauses.

After a hearing on September 17, 2020, the court adopted its revised tentative ruling granting the petition to compel arbitration as to the threshold issue whether Banc's remaining causes of action were subject to arbitration under the aircraft usage agreement. The court explained that by incorporating the AAA rules requiring the arbitrator to decide questions of arbitrability under the aircraft usage agreement, the "parties clearly and unmistakably delegated the question of the arbitrability of the 1st and 2nd causes of action under [§] 6.5 [of the aircraft usage agreement] to the arbitrator." Further, the parties' consent to jurisdiction in the California courts under the loan documents was "not inconsistent with the parties' intention to submit the question of arbitrability under [§] 6.5 of the Aircraft Usage Agreement to the arbitrator, as reflected by the incorporation of the AAA Commercial rules. Indeed, it is not uncommon for a lawsuit to be filed first and a petition to compel arbitration is filed in response, such that consent to jurisdiction would not necessarily be irreconcilable with a mandatory arbitration clause."

Banc filed a motion for reconsideration based on the recent decision in *Moritz v. Universal City Studios LLC* (2020)

54 Cal.App.5th 238, 241 (*Moritz*) that upheld the denial of a motion to compel arbitration of a contract that did not contain an arbitration clause even though earlier contracts between the parties contained arbitration clauses. After a hearing on December 4, 2020, the trial court denied the motion for reconsideration. The court entered an order on January 19, 2021 granting the petition to compel arbitration and motion to stay the action.

C.   *The Petition for Writ of Mandate*

On February 3, 2021 Banc filed a petition for writ of mandate challenging the trial court's January 19, 2021 order compelling the parties to arbitration and staying the action. On February 24, 2021 we issued an order to show cause why relief should not be granted. Holdings and Jet Edge filed a return, and Banc filed a reply.

**DISCUSSION**

A.   *Principles of Arbitration*

Section 1281.2 requires the trial court to order arbitration of a controversy "[o]n petition of a party to an arbitration agreement alleging the existence of a written agreement to arbitrate a controversy and that a party to the agreement refuses to arbitrate such controversy . . . if it determines that an agreement to arbitrate the controversy exists." Whether there is a written agreement to arbitrate "is a matter of contract, and courts must enforce arbitration contracts according to their terms." (*Schein, supra*, 139 S.Ct. at p. 529; accord, *Rent-A-Center, West, Inc. v. Jackson* (2010) 561 U.S. 63, 67 [The Federal

11

Arbitration Act (FAA) "reflects the fundamental principle that arbitration is a matter of contract"]; *Pinnacle Museum Tower Assn. v. Pinnacle Market Development (US), LLC* (2012) 55 Cal.4th 223, 236 (*Pinnacle*) ["""[A] party cannot be required to submit to arbitration any dispute which he has not agreed so to submit.""""].)[4]

"[P]arties may agree to have an arbitrator decide not only the merits of a particular dispute but also '"gateway" questions of "arbitrability," such as whether the parties have agreed to arbitrate or whether their agreement covers a particular controversy.'" (*Schein, supra*, 139 S.Ct. at p. 529; accord, *Rent-A-Center, West, Inc. v. Jackson, supra*, 561 U.S. at pp. 68-69.) "Unless the parties clearly and unmistakably provide otherwise,

---

[4] The arbitration clause does not specify whether the FAA or California Arbitration Act (CAA) applies. The substantive provisions of the FAA apply if the applicable arbitration clause is in "a contract evidencing a transaction involving commerce . . . ." (9 U.S.C. § 2; see *Volt Information Sciences, Inc. v. Board of Trustees of Leland Stanford Junior University* (1989) 489 U.S. 468, 476 ["It is undisputed that this contract falls within the coverage of the FAA, since it involves interstate commerce."]). Although it is undisputed that Banc is a national banking association, neither party addressed in the trial court or in this writ proceeding whether the FAA applies (or whether *Schein, supra*, 139 S.Ct. 524 controls if the CAA applies). We do not reach these issues because even if we assume *Schein* applies, as do the parties, under either the FAA or the CAA, it was for the trial court in the first instance to decide whether the parties agreed to arbitrate their dispute.

the question of whether the parties agreed to arbitrate is to be decided by the court, not the arbitrator." (*AT&T Technologies, Inc. v. Communications Workers of America* (1986) 475 U.S. 643, 649; accord, *Granite Rock Co. v. Int'l Broth. of Teamsters* (2010) 561 U.S. 287, 296 ["It is . . . well settled that where the dispute at issue concerns contract formation, the dispute is generally for courts to decide."]; *First Options of Chicago, Inc. v. Kaplan* (1995) 514 U.S. 938, 939.)

The party seeking to compel arbitration bears the burden of proving by a preponderance of the evidence an agreement to arbitrate a dispute exists. (*Pinnacle, supra*, 55 Cal.4th at p. 236; *Rosenthal v. Great Western Fin. Securities Corp.* (1996) 14 Cal.4th 394, 413.) Where the evidence is not in conflict, we review de novo the trial court's ruling on a petition to compel arbitration. (*Pinnacle*, at p. 236; accord, *Wilson-Davis v. SSP America, Inc.* (2021) 62 Cal.App.5th 1080, 1087 ["Because the basic facts underlying [defendant's] motion to compel arbitration are undisputed, this appeal presents a purely legal issue, which we review de novo."]; *Moritz, supra*, 54 Cal.App.5th at p. 245 [same].)

B.      Schein *and Its Progeny*

The United States Supreme Court in *Schein, supra*, 139 S.Ct. at pages 527 to 528, held the arbitrator should resolve the threshold question whether an arbitration agreement applies to a particular dispute where the arbitration agreement delegates to the arbitrator the question of arbitrability, regardless of whether the argument for arbitration is "'wholly groundless.'" (*Id*. at p. 528.) In *Schein*, the plaintiff filed suit for violation of federal and state antitrust laws. (*Ibid*.) The relevant contract

13

contained an arbitration clause that provided that "[a]ny dispute arising under or related to this Agreement (except for actions seeking injunctive relief [and other specified exceptions]) shall be resolved by binding arbitration in accordance with the arbitration rules of the American Arbitration Association." (*Ibid.*) The defendant requested the court refer the case to arbitration, but the plaintiff objected on the ground the complaint sought injunctive relief, which was excluded from the terms of the arbitration agreement. (*Ibid.*) The court observed the AAA rules delegate to the arbitrator the power to resolve arbitrability questions. (*Ibid.*) In rejecting the plaintiff's contention the court should decide the threshold issue of arbitrability notwithstanding the delegation provision, the court explained, "When the parties' contract delegates the arbitrability question to an arbitrator, a court may not override the contract. In those circumstances, a court possesses no power to decide the arbitrability issue. That is true even if the court thinks that the argument that the arbitration agreement applies to a particular dispute is wholly groundless." (*Id.* at p. 529.)

Banc relies on the decision of our colleagues in Division One of this district in *Moritz, supra*, 54 Cal.App.5th at page 248 to support its argument *Schein* does not control. In *Moritz*, the producer of The Fast and the Furious film and its sequels entered into eight written producer contracts with a studio setting forth the terms of the producer's work on the films. (*Id.* at p. 241.) The first seven contracts contained valid arbitration clauses. (*Id.* at p. 242.) The contract governing the eighth through tenth films provided that the terms of the seventh contract (with its arbitration clause) would "apply to any movie constituting a 'sequel' or 'remake' of earlier films in the franchise." (*Id.* at

14

p. 241.)  A dispute arose concerning a later "spinoff film" that would be based on characters from the prior films but was neither a sequel nor a remake.  (*Id*. at pp. 242-243.)  The producer sued the studio, alleging the parties had an oral agreement the studio breached.  (*Id*. at p. 243.)  The studio moved to compel arbitration under the arbitration clause in the seventh contract.  (*Id*. at p. 244.)  The Court of Appeal affirmed the trial court's denial of the motion, explaining *Schein* "presupposes a dispute arising out of the contract or transaction, i.e., some minimal connection between the contract and the dispute.  That is so because under the FAA, contractual arbitration clauses are 'valid, irrevocable, and enforceable' if they purport to require arbitration of any 'controversy thereafter arising out of such contract.'  (9 U.S.C. § 2.)  *Schein* expressly understood that the Act requires enforcement of arbitration clauses with respect to disputes "'thereafter arising out of such contract.'"  [Citation.]  The FAA requires no enforcement of an arbitration provision with respect to disputes unrelated to the contract in which the provision appears.  Appellants' argument that an arbitration provision creates a perpetual obligation to arbitrate any conceivable claim that Moritz might ever have against them is plainly inconsistent with the FAA's explicit relatedness requirement."  (*Moritz*, at p. 248.)

Division One revisited *Schein* in *Bautista v. Fantasy Activewear, Inc.* (2020) 52 Cal.App.5th 650, 656, again concluding *Schein*'s holding that the arbitrator must decide the threshold question of arbitrability did not apply to the parties' dispute.  In *Bautista*, the plaintiffs asserted representative claims on behalf of the state under the Private Attorneys General Act (PAGA; Lab.

Code, § 2698 et seq.).[5]  The plaintiffs were putative class members in an earlier wage and hour class action against the employer that resulted in a settlement agreement containing an arbitration clause.  (*Bautista*, at p. 654.)  The arbitration clause provided the arbitrator with the authority to determine "'arbitrability issues as a preliminary matter.'"  (*Ibid*.)  The defendant employer petitioned to compel arbitration of the plaintiffs' PAGA claims pursuant to the settlement agreement. (*Ibid*.)  The Court of Appeal affirmed the trial court's denial of the employer's petitions (filed as to each of the plaintiffs) because the plaintiffs were not acting as agents of the state when they settled their prior claims and entered into the settlement agreement. (*Id.* at 657; *id.* at 655 ["[A]rbitration agreements entered into before a plaintiff has been deputized for purposes of a PAGA representative action [are] not enforceable for purposes of the PAGA representative action."].)  Thus, on the threshold question of "'whether there is an agreement to arbitrate'" between the employer and the real party in interest, the Court of Appeal concluded there was not.  (*Bautista*, at p. 658; cf. *Communications Workers of America v. AT&T Inc.* (D.C. Cir. 2021) 6 F.4th 1344, 1346 [concluding in reviewing action to compel arbitration of dispute under specific contract, under *Schein* "[t]he question whether the parties' dispute falls within the contract's arbitration clause, then, is for an arbitrator, not a court, to decide"].)

---

[5]     The initial complaint also alleged class claims, but the plaintiffs dismissed their claims after the employer filed its petition to compel arbitration.

16

C.     *The Trial Court Erred in Compelling Arbitration of the Threshold Question of Arbitrability*

As discussed, *Schein* instructs that "[w]hen the parties' contract delegates the arbitrability question to an arbitrator," it is for the arbitrator, not the court, to decide the threshold arbitrability issue.  (*Schein, supra*, 139 S.Ct. at p. 529.)  But unlike in *Schein*, where the court considered who should decide whether the parties' dispute fell within the scope of a specific contract, here the trial court was tasked with deciding in the first instance whether there was an agreement to arbitrate at all.  (See *Granite Rock Co. v. Int'l Broth. of Teamsters, supra*, 561 U.S. at p. 296; *AT&T Technologies, Inc. v. Communications Workers of America, supra*, 475 U.S. at p. 649.)  We agree with the reasoning in *Moritz* and *Bautista* that where a party seeks to arbitrate a dispute that arises from a contract without an arbitration clause, the court is not required under *Schein* to defer to the arbitrator on the threshold determination of arbitrability.  (See *Bautista, supra*, 52 Cal.App.5th at p. 656; *Moritz, supra*, 54 Cal.App.5th at p. 248.)  Rather, where the party moving to compel arbitration asserts a different contract with an arbitration provision shows the parties' intent to arbitrate, the question of the parties' intent is for the court to resolve.  As the *Bautista* court explained in finding the holding in *Schein* did not apply, "The question here is not whether claims are arbitrable under an agreement among the parties, but rather whether there exists an agreement among the parties to arbitrate."  (*Bautista*, at p. 656.)

Here, the only agreement that contained an arbitration clause was the aircraft usage agreement entered into almost two months after execution of the loan documents.  The aircraft usage agreement incorporated the AAA rules, which delegated the

17

question of arbitrability to the arbitrator.[6] But once Banc dismissed its third and fourth causes of action, the remaining causes of action related only to the seven loan documents, none of which contained an arbitration clause. As discussed, the first cause of action alleged a breach of the seven loan documents, including a failure to pay over $3 million owed on the loan, the right to sell the aircraft, and the right to enforce Banc's rights under the charter agreement. The second cause of action alleged Jet Edge's breach of the charter agreement and subordination agreement. Further, the arbitration clause in the aircraft usage agreement provided that all disputes "between the [p]arties relating to this Agreement" shall be submitted to arbitration, but the "Agreement" was narrowly defined to mean the "Aircraft Usage Agreement." By contrast, five of the seven loan documents, including the pivotal loan agreement and promissory note, specified which courts would have jurisdiction "[i]f there is a lawsuit." The promissory note, loan agreement, security agreement, and assignment agreement also provided for a jury waiver, and the loan agreement provided that any disputes would be heard by a referee. Given the parties' clear expression of which courts (or referee) would hear any lawsuit arising from the loan documents, the parties' failure to specify in the loan

---

[6] The AAA rules provide, "The arbitrator shall have the power to rule on his or her own jurisdiction, including any objections with respect to the existence, scope, or validity of the arbitration agreement or to the arbitrability of any claim or counterclaim."

18

documents that the disputes would be decided by an arbitrator shows the parties' contrary intent.[7]

Holdings argues we should interpret the language in the aircraft usage agreement requiring arbitration of any dispute "relating to this Agreement" broadly, relying on *Ramos v. Superior Court* (2018) 28 Cal.App.5th 1042, 1052. The court in *Ramos* observed that arbitration clauses using the phrase "'arising under *or related to*' . . . have been construed more broadly" than arbitration clauses providing for arbitration of disputes "'arising from'" or "'arising out of'" an agreement. (*Ibid.*) Further, Holdings asserts, because the seven loan documents and the aircraft usage agreement are "interrelated," this supports arbitration. But even if the loan documents had some relationship to the aircraft usage agreement, the question for the trial court was whether the parties' *dispute* related to the aircraft usage agreement. It did not. Nothing in the record (as alleged in the first amended complaint or submitted with the petition to compel arbitration) shows the breach of the loan documents was in any way related to the aircraft usage agreement, which simply provided the terms for Banc to obtain a discounted price for flight time on Holdings's aircraft. While it may well be that the incentive for Banc to make the loan to Holdings was a future discounted rate on a charter of Holdings's aircraft, this does not show that the parties' dispute—over Holdings' alleged breach of

---

[7] As the trial court noted, it is common for a lawsuit to be filed before a motion to compel arbitration is made, which scenario was envisioned in the aircraft usage agreement, but the parties' inclusion in the loan documents of jurisdiction provisions but not arbitration clauses shows the parties' intent a court (or referee) resolve any disputes.

19

the loan documents—was in any way related to the aircraft usage agreement.[8]

Holdings's reliance on the stray allegations in the complaint containing facts that previously supported the since-dismissed third and fourth causes of action is similarly misplaced. It is true that paragraph 6 of the first amended complaint alleges that Holdings wrongfully transferred possession of the remaining deposit under the aircraft usage agreement to Does 11 through 20 without Banc's approval. But this allegation is contained in the section of the amended complaint identifying the parties, and Does 11 through 20 are only named in the third and fourth causes of action. Likewise, although paragraphs 61 through 81 address the aircraft usage agreement, these allegations were contained in the third and fourth causes of action that have since been dismissed.

Thus, Holdings did not meet its burden to show the parties had "clearly and unmistakably" agreed to arbitrate their dispute over the loan documents based on the arbitration clause in the aircraft usage agreement. *(AT&T Technologies, Inc. v. Communications Workers of America, supra*, 475 U.S. at p. 649.) Absent an agreement to arbitrate, the trial court erred in granting Holdings's petition to compel arbitration on the issue of arbitrability.

---

[8] As discussed, in the trial court Holdings pointed to Estrin's declaration in which he stated that Banc's counsel on a telephone call told him that Banc agreed to provide the loan in part because of the aircraft usage agreement. Holdings does not argue in its return that this statement attributed to Banc shows the parties' dispute over the loan documents was related to the aircraft usage agreement.

## DISPOSITION

The petition is granted.  A peremptory writ of mandate shall issue directing respondent superior court to vacate its January 19, 2021 order granting Holdings's petition to compel arbitration and motion to stay the action and to enter a new order denying the petition and motion.  Banc is to recover its costs in this writ proceeding.


                                    FEUER, J.

We concur:


        PERLUSS, P. J.


        SEGAL, J.


21