FILED
**United States Court of Appeals**
**Tenth Circuit**

**March 22, 2022**

**Christopher M. Wolpert**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**
_____

CASA ARENA BLANCA LLC,

    Plaintiff - Appellant,

v.

LADONNA KAY RAINWATER,
deceased, by the personal representative of
the wrongful death estate of BARRY
GREEN, ESQ.,

    Defendant - Appellee.

No. 21-2037
(D.C. No. 1:20-CV-00314-JCH-SCY)
(D. N.M.)

_____

**ORDER AND JUDGMENT**[*]
_____

Before **PHILLIPS**, **BALDOCK**, and **EID**, Circuit Judges.
_____

Plaintiff Casa Arena Blanca LLC appeals from the district court's denial of its

motion to compel arbitration under the Federal Arbitration Act ("FAA"), 9 U.S.C.

§§ 1-16.  Exercising jurisdiction under 28 U.S.C. § 1291, we reverse and remand for

further proceedings.

_____

[*] After examining the briefs and appellate record, this panel has determined
unanimously to honor the parties' request for a decision on the briefs without oral
argument.  *See* Fed. R. App. P. 34(f); 10th Cir. R. 34.1(G).  The case is therefore
submitted without oral argument.  This order and judgment is not binding precedent,
except under the doctrines of law of the case, res judicata, and collateral estoppel.  It
may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1
and 10th Cir. R. 32.1.

I.  Background

Plaintiff operates the Casa Arena Blanca Nursing Center ("Facility").

Ladonna Kay Rainwater was a patient at the Facility for post-surgery care.  After

spending seventeen days at the Facility, Ms. Rainwater was subsequently transferred

to a medical center to be treated for infection, sepsis, and altered mental status.  She

died just over a year later.  Ms. Rainwater's estate, represented by Barry Green

("the Estate"), filed a wrongful-death lawsuit in state court, alleging that the Facility

and other defendants failed to properly care for Ms. Rainwater when she was a

patient at the Facility.

While Ms. Rainwater was a patient at the Facility, her daughter,

Melanie Burris, signed an Admission Agreement and a Dispute Resolution

Agreement ("Arbitration Agreement").  The Arbitration Agreement stated it was

"between Kay Rainwater ('Resident') and/or Melanie Burris ('Representative'), and

Casa Arena Blanca ('Facility')."  Aplt. App. at 33.  The Arbitration Agreement

explained:

> When this Agreement says that the Representative signs in his or her
> individual capacity, this means that, in addition to entering the Agreement
> on behalf of the Resident, the Representative, himself or herself, also enters
> the agreement with us.  The Representative does so because he or she
> wishes to obtain care and services for the Resident who is a third-party
> beneficiary of the agreement between the Facility and the Representative.
> Our agreement to admit the Resident . . . personally benefits the
> Representative as well as the Resident.

*Id.* at 37.

2

The Arbitration Agreement also explained that both parties were agreeing to mutual arbitration and that any dispute that arises regarding Ms. Rainwater's stay at the Facility would be resolved by an arbitrator instead of a judge or jury. It further provided that the FAA governs the agreement and that the arbitration will follow the FAA and the rules and procedures of the Judicial Arbitration and Mediation Service ("JAMS").

Plaintiff initially filed a motion to compel arbitration in the state-court action, but it later withdrew the motion without waiving its right to request arbitration later. Plaintiff then filed a complaint in federal court against the Estate to compel arbitration based on the FAA, 9 U.S.C. § 4. Plaintiff also filed a motion to compel arbitration.

A.  Motion to Compel Arbitration

In its motion, Plaintiff argued that "the Arbitration Agreement contains a 'Delegation Clause' that clearly and unmistakably delegates to the arbitrators all 'gateway' disputes regarding arbitrability." Aplt. App. at 97. The Delegation Clause states: "To the fullest extent permitted by law, any disagreements regarding the applicability, enforceability or interpretation of this Agreement will be decided by the arbitrator and not by a judge or jury." *Id.* at 36.

Plaintiff further argued that the arbitration is governed by the JAMS rules, which the Arbitration Agreement incorporates, and those rules "also clearly and unmistakably manifest the parties' agreement to arbitrate gateway arbitrability questions." *Id.* at 97. The pertinent JAMS rule states: "Jurisdictional and

3

arbitrability disputes, including disputes over the formation, existence, validity, interpretation or scope of the agreement under which Arbitration is sought, and who are proper Parties to the Arbitration, shall be submitted to and ruled on by the Arbitrator" who "has the authority to determine jurisdiction and arbitrability issues as a preliminary matter." *Id.* at 46.

Plaintiff therefore asserted that "any dispute regarding whether the Arbitration Agreement is valid and enforceable or whether a resident is bound by the Arbitration Agreement must be submitted to the arbitrators for resolution." *Id.* at 97. In other words, Plaintiff contended that "the Delegation Clause and JAMS rules require that any arbitrability challenge raised by [the Estate] be decided by the arbitrators, rather than the [district court]." *Id.* at 104.

Alternatively, Plaintiff argued that, even if there was no delegation provision, Defendant's underlying claims against Plaintiff in state court must be arbitrated pursuant to the Arbitration Agreement because the: (1) the Arbitration Agreement between the Facility and Ms. Burris is valid and enforceable; (2) the Estate must arbitrate because Ms. Rainwater is a third-party beneficiary of the Arbitration Agreement; and (3) the Estate is also bound by the Arbitration Agreement under the equitable estoppel doctrine.

The Estate opposed the motion. It first asserted that "no valid agreement to arbitrate exists or was ever formed by the parties." *Id.* at 125 (capitalization and boldface omitted). In support, it argued (1) "the alleged Agreement cannot be enforced because neither Ms. Rainwater nor a legally authorized representative ever

4

assented to the alleged Agreement," *id.* at 126; (2) the alleged Agreement is unenforceable as to Ms. Burris individually because she "is not a party to the underlying state court action and she is not the Personal Representative of the [Estate]," *id.* at 128; and (3) "[t]he alleged Agreement is unenforceable under the third-party beneficiary or equitable estoppel doctrines," *id.* (capitalization and boldface omitted).

The Estate next asserted that "[t]he alleged Agreement is a procedurally unconscionable contract of adhesion," *id.* at 131 (capitalization and boldface omitted), and is "unenforceable under both applicable federal regulations and general principles of contract law," *id.* at 136. Finally, the Estate argued that the court should decide the gateway issue of arbitrability because the Delegation Clause was ambiguous and therefore unenforceable. It also reiterated its earlier argument that "there is no agreement in the first place due to the lack of authority to bind Ms. Rainwater or her [Estate]," *id.* at 138, and "[t]he Court should first determine whether a contract exists before it can enforce a provision of the contract," *id.* at 136.

Plaintiff filed a reply in support of its motion. It argued that the Estate did not dispute that Ms. Burris signed the Arbitration Agreement to secure Ms. Rainwater's admission to the Facility nor did the Estate specifically challenge the delegation language in the JAMS rules, which the Arbitration Agreement incorporates. It also asserted that because the Estate's argument regarding Ms. Burris's lack of authority was directed to the Arbitration Agreement as a whole and did not specifically target the Delegation Clause, it could not be considered. It further asserted that

5

Ms. Rainwater was bound by the Arbitration Agreement under third-party beneficiary and equitable estoppel doctrines and "[t]hus, [the Estate's] contention that Ms. Burris lacked authority to agree to arbitration on Ms. Rainwater's behalf is irrelevant to Plaintiff's Motion." *Id.* at 204. Because "[t]he arbitrators alone have the authority to decide [the Estate's] defenses to the Arbitration Agreement," Plaintiff contended "the Court should enforce the delegation provision in the Agreement and the JAMS Rules and compel arbitration." *Id.* at 199.

B. District Court Decision

In its decision, the court first rejected the Estate's argument that there was ambiguity in the Arbitration Agreement about the parties' intent to delegate disagreements about arbitrability to an arbitrator. The court explained: "The Tenth Circuit made clear [in *Belnap v. Iasis Healthcare*, 844 F.3d 1272, 1281 (10th Cir. 2017),] that incorporating JAMS rules in which arbitrability decisions are plainly decided by the arbitrator compels finding an intent to delegate" and "*Belnap* is controlling here." *Id.* at 261. The court next determined that because the Estate's arguments concerning procedural unconscionability targeted the agreement as a whole and were not particular to the delegation provision, the Estate's "unconscionability challenge is for an arbitrator to decide based on the plain language of the delegation provision." *Id.* at 263.

But when it came to the Estate's argument that Ms. Burris did not have authority to enter the agreement on behalf of the Estate, which also went to the Arbitration Agreement as a whole and was not specific to the delegation provision,

the court found "that the question of whether any contract exists at all to bind the Estate is one for this Court and not the arbitrator," *id.* at 264 (citing *Fedor v. United Healthcare, Inc.*, 976 F.3d 1100, 1104 (10th Cir. 2020)).  In considering this "gateway question . . . of contract formation," Aplt. App. at 264, the court looked to whether Ms. Burris had authority to enter the contract for Ms. Rainwater under agency law.  The court ultimately concluded that Plaintiff had "not met its burden of showing an agency relationship existed between Ms. Rainwater and Ms. Burris."  *Id.* at 266.

The court next considered whether the Arbitration Agreement between Ms. Burris individually and the Facility could bind Ms. Rainwater under the third-party beneficiary and equitable estoppel doctrines.  The court recognized that the contractual terms "evince an intent to name Ms. Rainwater, the Resident, as a third-party beneficiary," *id.* at 268.  The court explained that the third-party beneficiary doctrine generally "applies when a non-signatory attempts to enforce the contract against a signatory."  *Id.* at 269.  But the court observed that New Mexico courts had not resolved the question at issue here—"whether and under what circumstances a signatory may compel a non-signatory to arbitrate under the third-party beneficiary doctrine."  *Id.*  Based on the circumstances in this case, the court determined that Plaintiff had not met its burden of showing its entitlement to compel arbitration under the third-party beneficiary doctrine.  The court reached the same determination regarding the applicability of the equitable estoppel doctrine.

The court denied Plaintiff's motion to compel arbitration, and this appeal followed.

II. Discussion

We review de novo a district court's denial of a motion to compel arbitration. *Ragab v. Howard*, 841 F.3d 1134, 1136 (10th Cir. 2016).[1]

Plaintiff contends that the district court erred in not enforcing the delegation provisions in the Arbitration Agreement, which delegated all gateway issues of arbitrability to the arbitrator.  It explains that "[n]one of the parties disputed that a contract (the Arbitration Agreement) was formed between Ms. Burris and the Facility," Aplt. Opening Br. at 12; "[t]he issue is thus not one of contract formation . . . , but instead one of *enforcement*—can the Arbitration Agreement be *enforced* against the Estate because Ms. Rainwater was a third-party beneficiary of the Agreement," *id.* at 14.  Plaintiff argues the gateway issue of arbitrability must be submitted to the arbitrator to decide in the first instance because the Arbitration Agreement contains clear and unmistakable delegation provisions.  Plaintiff therefore asserts that the district court "erred in deciding [the third-party beneficiary] issue

---

[1] The Estate asserts in its jurisdictional statement that Plaintiff "has not sufficiently demonstrated that federal subject matter jurisdiction exists pursuant to 28 U.S.C. § 1332(a)(1)."  Aplee. Resp. Br. at 1.  But the Estate offers no explanation as to how Plaintiff failed to establish that the district court possessed diversity jurisdiction over the case.  Plaintiff explains that it alleged in its complaint that the parties were citizens of different states (Delaware and Maryland for Plaintiff and New Mexico for the Estate) and that the amount in controversy exceeds $75,000.  Because the Estate did not explain why these allegations were insufficient, we see no basis to conclude that the district court lacked jurisdiction under § 1332(a)(1).

rather than compelling arbitration." *Id.* at 12. We agree.[2]

Under § 4 of the FAA, a party "aggrieved" by another party's failure "to arbitrate under a written agreement for arbitration" may petition a federal court "for an order directing that such arbitration proceed in the manner provided for in such agreement." 9 U.S.C. § 4. In *Rent-A-Center, West, Inc. v. Jackson*, 561 U.S. 63, 68-69 (2010), the Supreme Court explained that a "delegation provision is an agreement to arbitrate threshold issues concerning the arbitration agreement" and "parties can agree to arbitrate 'gateway' questions of 'arbitrability,' such as whether the parties have agreed to arbitrate or whether their agreement covers a particular controversy." The Court further explained that "[a]n agreement to arbitrate a gateway issue is simply an additional, antecedent agreement the party seeking arbitration asks the federal court to enforce, and the FAA operates on this additional arbitration agreement just as it does on any other." *Id.* at 70. Courts, however, "should not assume that the parties agreed to arbitrate arbitrability unless there is clear and unmistakable evidence that they did so." *Belnap*, 844 F.3d at 1281 (brackets and internal quotation marks omitted).

Here, Plaintiff sought to enforce the delegation terms in the Delegation Clause and the JAMS rules, which the Arbitration Agreement expressly incorporated,

---

[2] Because we agree with Plaintiff that the district court erred in reaching an issue that should have been submitted to the arbitrator, we need not address Plaintiff's second argument—whether "the district court incorrectly determined that the New Mexico Supreme Court would not compel a non-signatory to arbitrate under the third-party beneficiary doctrine," Aplt. Opening Br. at 12 (internal quotation marks omitted).

arguing that "the Delegation Clause and JAMS rules require that any arbitrability challenge raised by [the Estate] be decided by the arbitrators, rather than the [district court]," Aplt. App. at 104. If a party "seeks to enforce" a delegation clause, the opposing party must "challenge[] the delegation provision specifically"; otherwise, the court "must treat [the delegation clause] as valid" and "enforce it" under the FAA, "leaving any challenge to the validity of the Agreement as a whole for the arbitrator." *Rent-A-Ctr.*, 561 U.S. at 72; *see also Fedor*, 976 F.3d at 1105 ("[I]f a party . . . fails to specifically challenge a delegation clause . . . , then the delegation clause will typically require a court to compel arbitration and allow an arbitrator to determine whether the arbitration contract was indeed valid.").

Although the Estate argued in response to the motion to compel that a sentence after the Delegation Clause created ambiguity and therefore the delegation provision was not clear and unmistakable, it never challenged the delegation terms in the JAMS rules. In *Belnap*, we concluded that the parties "clearly and unmistakably agreed to arbitrate arbitrability when they incorporated the JAMS Rules into the Agreement." 844 F.3d at 1281. In its decision, the district court recognized that "[t]he JAMS rule regarding arbitrability in *Belnap* is identical to the JAMS rule here" and found an intent to delegate under the holding in *Belnap*. Aplt. App. at 261. "[B]ased on the plain language of the delegation provision," and the *Rent-A-Center* decision, the district court concluded that the Estate's argument that the Arbitration Agreement was unconscionable—which challenged the agreement as a whole and not the delegation provision—had to be submitted to an arbitrator. *Id.* at 263.

But after initially determining there was an enforceable delegation provision and concluding that the Estate's unconscionability argument needed to be submitted to an arbitrator based on that provision, the district court next determined that there was an "initial question" of "whether the Estate ever entered an agreement at all with [the Facility] to which it can be bound." *Id.* at 264. Because the court characterized this question as one of contract formation, it found that the question of whether any contract existed to bind the Estate was for the court to decide and not the arbitrator, citing our decision in *Fedor*.

*Fedor* is distinguishable on its facts, though, and for that reason it does not support the district court's decision to consider this question. In *Fedor*, a former employee filed a collective suit against her former employer. 976 F.3d at 1100. The employer sought to compel arbitration based on four arbitration policies, but the fourth policy from 2016 was the only one that contained a delegation provision. *Id.* at 1103-04. The plaintiffs argued the first three policies were void as illusory and that the 2016 policy was irrelevant because none of them saw or signed it. *Id.* at 1104. The district court nevertheless compelled arbitration based on the 2016 agreement because the plaintiffs did not challenge the delegation provision specifically. *Id.* The lead plaintiff argued on appeal that a court must first determine whether an agreement to arbitrate was formed before sending the case to an arbitrator. *Id.* We agreed, explaining that the lead plaintiff "raised an issue of formation which . . . cannot be delegated to an arbitrator." *Id.* at 1106-07.

Here, in contrast, the parties did not dispute that an agreement was formed

11

between Ms. Burris and the Facility, and neither is there a dispute that the agreement contains a delegation provision. Further, Plaintiff never argued that Ms. Burris had the authority to enter into the Arbitration Agreement on Ms. Rainwater's behalf. Instead, Plaintiff asserted that based on the Arbitration Agreement formed between the Facility and Ms. Burris, the Arbitration Agreement should be enforced against Ms. Rainwater as a third-party beneficiary of that agreement.

Moreover, by initially discussing the Arbitration Agreement's delegation provision and rejecting the Estate's challenge to that provision, the district court necessarily concluded that an arbitration agreement was formed between Ms. Burris and the Facility. Had the district court found that no agreement had been formed, there would have been no need to determine whether the Arbitration Agreement contained an enforceable delegation provision.[3]

We conclude the district court's rulings—on the one hand that there was an agreement to arbitrate and an enforceable delegation provision as to the Estate's unconscionability argument, and on the other hand that there was a question as to whether an agreement to arbitrate had ever been formed and then proceeding to address the third-party beneficiary issue—are inconsistent. We agree with and affirm the district court's first ruling—that there is an arbitration agreement between Ms. Burris and the Facility that contains an enforceable delegation clause. Once the

---

[3] Likewise, if the district court had determined that no agreement to arbitrate had been formed between Ms. Burris and the Facility, then it would not have needed to go on to address whether the Arbitration Agreement could be enforced against Ms. Rainwater as a third-party beneficiary of that agreement.

district court made that determination, it should have sent the case to arbitration. The district court erred in going on to decide whether there was a second agreement to arbitrate formed between the Facility and Ms. Rainwater and then proceeding to address the third-party beneficiary issue.

Based on the delegation provisions in the Arbitration Agreement between the Facility and Ms. Burris, the question of whether the Agreement should be enforced against Ms. Rainwater as a third-party beneficiary of that contract is one that should be decided by an arbitrator, not the court. Because there is no issue of contract formation, only contract enforcement, the gateway issue of arbitrability must be submitted to the arbitrator consistent with the delegation provisions in the Arbitration Agreement.

III. Conclusion

For the foregoing reasons, we reverse and remand for the district court to compel arbitration of the gateway issue of arbitrability.

Entered for the Court


Allison H. Eid
Circuit Judge

13